# THE BOARD OF SUPERVISORS OF CHESTERFIELD COUNTY, VIRGINIA

## V.

## TROLLINGWOOD PARTNERSHIP

Record No. 930943

June 10, 1994

Present: All the Justices

*Steven L. Micas, County Attorney (Stylian P. Parthemos, Senior Assistant County Attorney*, on briefs), for appellant.
*J. Steven Erie (John F. Rick; Maloney, Yeatts & Barr*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

The dispositive issue in this zoning case is whether a property owner acquired a vested right to develop a mobile home park before amendment of the zoning ordinance to prohibit such use of the property.

In January 1970, Lloyd C. Journigan, Jr., paid $1,000 for an option to buy approximately 160 acres of agricultural land in Chesterfield County (the County). Journigan planned to develop part of this land as a mobile home park and the balance for other uses.

Before exercising his option, Journigan applied to the Board of Supervisors of Chesterfield County (the Board) for a rezoning of the land from an "A" district (agricultural) to a "C-2" district (general business). In a general business district, mobile home parks were permitted subject to the grant of a special use permit by the Board of Zoning Appeals (the BZA). The Board rezoned to C-2 classification a portion of the property which the parties agree included the land to be utilized as the mobile home park.

In May 1970, as part of his application for a special use permit, Journigan submitted to the BZA a "first design proposal" showing the general layout of a 500-unit mobile home park (the park). The application included a plat showing the general layout of a gravity-flow sewage system and unscaled, schematic drawings of his proposed sewage treatment plant for the park. The BZA granted

Journigan's special use permit for the park "subject to the final site layout, landscaping and plans being approved by the Planning Director." In January 1971, Journigan exercised the option and acquired the property.[1]

Rather than submitting the required detailed site plans covering the entire park, Journigan submitted plans in two stages. The first stage ("Phase One") covered 134 units, and the second stage ("Phase Two") covered 172 units. The County zoning ordinance was amended in July 1971 to preclude establishment of mobile home parks in general business districts. However, Journigan's detailed plans and the construction in progress on Phases One and Two were apparently sufficient to give Journigan a vested right to complete those phases in 1975.

In 1975, Journigan conveyed his interest in the property to another party. That party and its successors are hereafter referred to as Trollingwood, their adopted business name. In November 1984, Trollingwood's engineer contacted the County's planning department regarding Trollingwood's plan to complete the park by extending Phases One and Two into Phase Three. After the planning department informed Trollingwood that it had no vested right to expand the park into Phase Three, Trollingwood applied for an amendment to the zoning ordinance. Trollingwood's rezoning application was denied by the Board in June 1985.

In September 1988, Trollingwood's counsel contacted the director of planning, contending that the planning department had erroneously required Trollingwood to file a rezoning application since Trollingwood's right to expand the park to its 500-unit capacity had vested under the May 1970 special use permit issued to Journigan. The County disagreed, and Trollingwood sought a declaratory judgment establishing its asserted right.

The parties stipulated to the facts. At oral argument, the County argued that Trollingwood had not acquired a vested right to expand into proposed Phase Three because it had not submitted the detailed plan for that phase, as required by the special use permit, prior to the amendment of the ordinance. However, the trial court agreed with Trollingwood that the use permit issued by

---

[1] Journigan had the sellers convey title to a corporation in which he was the sole stockholder, Modular Corp. Other parties later became associated with Journigan in developing the land and various entities held title thereto. Since Journigan continued to be active in the venture until 1975 and the details of those transfers are not relevant to this appeal, we will continue to refer to those parties and entities as Journigan.

the BZA for the 500-unit park created a vested right in Journigan and his successors to expand the park into the balance of the park area shown on Journigan's "first design proposal." The County appeals.[2]

We disagree with Trollingwood's argument that Journigan's general plans for the 500-unit park, including his "first design proposal" and "Preliminary Sewage Treatment Facilities for [the 500-unit park]," were sufficient to create a vested right to complete the development of the balance of the park. Trollingwood overlooks the provisions of § 17-7(i) of the County zoning ordinance requiring property owners to submit detailed plans for "trailer parks," and the fact that Journigan did submit such plans for Phases One and Two in conformity with his special use permit.

■ Journigan's detailed plans for Phases One and Two are drawn to scale and show the precise locations of the streets, curbs, gutters, and individual trailers. Among other things, those plans also reflect detailed contours of the land for grading and drainage, water and sewer connections on each lot, and sewer profiles. By contrast, no such plans have ever been submitted for Phase Three. Thus, while Journigan and Trollingwood acquired vested rights to develop Phases One and Two, we conclude that Journigan's preliminary plans were insufficient to give Trollingwood a vested right to develop Phase Three.

Trollingwood argues that because the County had issued the special use permit and approved the detailed plans for Phases One and Two of the trailer park, the rule articulated in *Notestein v. Board of Supervisors*, 240 Va. 146, 151, 393 S.E.2d 205, 208 (1990), is applicable, giving rise to Trollingwood's vested right to proceed with construction of Phase Three. In *Notestein*, the Court indicated that a property owner who has been issued a special use permit would acquire a vested right to the use described in the permit if a "bona fide site plan has thereinafter been filed and diligently pursued, and substantial expense has been incurred in good faith" reliance on the permit. *Id.* (quoting *Fairfax County v. Medical Structures*, 213 Va. 355, 358, 192 S.E.2d 799, 801 (1972)). However, *Notestein* is inapplicable here because neither

---

[2] Trollingwood assigns cross-error to the trial court's holding that one area of its property was not covered by the 1970 rezoning. This assignment is procedurally barred because the record does not indicate that Trollingwood objected to the court's action; indeed, its counsel signed the final order under the statement, "I ask for this." Rule 5:25. Accordingly, we will not consider the assignment of cross-error.

Journigan nor Trollingwood had filed the detailed Phase Three site plan required by the ordinance and by the express terms of the special use permit before the property was rezoned.

And *Belle-Haven Citizens Ass'n v. Schumann*, 201 Va. 36, 109 S.E.2d 139 (1959), relied on by Trollingwood, is inapposite. In *Belle-Haven*, the Court simply construed the provisions of a city ordinance specifying when construction of individual buildings was required to begin under a multiple building use permit. *Belle-Haven* did not involve the issue of vested rights after a change in a zoning ordinance.

Finally, Trollingwood contends that even if it does not have a vested right to construct Phase Three of its development, its nonconforming uses of Phases One and Two authorize an expansion into Phase Three because the "character" of its use had remained constant throughout the amendment period. However, an increase in the *area* of a nonconforming use was clearly proscribed by § 3-4 of the zoning ordinance in effect when Trollingwood sought to expand its use in 1984. That section provided in pertinent part that "[n]o non-conforming use shall be enlarged, [or] extended." Such prohibitions reflect the general rule prohibiting an increase in the land area of a nonconforming use. *See* 4 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 51A.04(5)(a) (4th ed. 1993). Thus, we find no merit in this argument.

Accordingly, we conclude that the trial court erred in holding that Trollingwood had the right to expand its trailer park into Phase Three. Therefore, we will reverse the judgment of the trial court and enter final judgment for the County.

*Reversed and final judgment.*