Present:  All the Justices

MANUEL E. GOYONAGA, ET AL.

OPINION BY
v.  Record No. 070229        JUSTICE LAWRENCE L. KOONTZ, JR.
                                    February 29, 2008

BOARD OF ZONING APPEALS FOR
 THE CITY OF FALLS CHURCH

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge


This appeal arises from a petition for certiorari filed in the appropriate circuit court challenging a stop work order issued by a zoning administrator and upheld on appeal to the local board of zoning appeals.  The stop work order was issued to prohibit renovations of a residential structure that qualified as a pre-existing nonconforming use under the applicable zoning ordinance.  The circuit court found no error in the decision of the board of zoning appeals, and also denied a request for a declaratory judgment that the property owners had acquired a vested right to continue the nonconforming use of the property. The principal issue in this appeal is whether the initial decision of a board of zoning appeals to grant a variance allowing a nonconforming structure to be enlarged and extended converts the structure into a conforming use for subsequent applications of the zoning ordinance.

BACKGROUND

Manuel E. Goyonaga and his wife, Lourdes Calatayud-Levy, (collectively, "the Goyonagas") own a residential home in the City of Falls Church. The home is located in an R-1B zone as defined by that city's zoning ordinance. The lot on which the home was constructed was created by a 1928 subdivision pre-dating the current zoning ordinance. The lot now would be treated as a substandard lot because it lacks sufficient width and its total area is less than is permitted to qualify as a buildable lot in an R-1B zone.[1] Falls Church City Code § 38-17(e)(1). Moreover, the home itself does not conform to the minimum side yard setback of 10 feet required by the ordinance for a structure in an R-1B zone because the side yards are approximately 8 feet and 8.4 feet from the side lot lines. Falls Church City Code § 38-17(e)(3). Thus, it is not disputed that both the lot and the home became pre-existing nonconforming uses when the current ordinance went into effect. Falls Church City Code § 38-6(b).

---

[1] Under Falls Church City Code § 38-28(b)(2), a pre-existing substandard lot in an R-1B zone may be used for construction of a single-family residential home provided that certain criteria are met. Although reference to this provision of the city code was made during oral argument of this appeal, the Goyonagas do not assert its application as a basis for challenging the stop work order.

As pre-existing nonconforming uses, the lot and home were subject to certain restrictions on changes to the use of the lot or alteration of the structure under the zoning ordinance.  Relevant to the issues raised in this appeal, the Falls Church City Code provides that a "structural addition" to a nonconforming structure is permissible in certain cases provided that "[n]o portion of the addition would be closer to a front or side lot line than the existing structure."  Falls Church City Code § 38-6(c)(3).  The zoning administrator is authorized under this subsection of the ordinance to approve an application for such an addition or to "deny such application and refer the application to the board of zoning appeals for consideration of a variance."  Id.

The ordinance further provides that

[i]f any building in or on which a nonconforming use is maintained is . . . removed or demolished . . . or damaged by . . . any means whatever to an extent equal to seventy-five (75) percent of its assessed value for the year . . . the right of such nonconforming use to continue shall cease at the time of such . . . removal . . . and no further use shall be made of the property except as permitted in the district in which it is located.

Falls Church City Code § 38-6(c)(2).  Unlike subsection (c)(3), however, the zoning administrator is not authorized to grant an exemption from the provisions of subsection

3

(c)(2). Any such exemption must be obtained in the form of a variance granted by the board of zoning appeals under Falls Church City Code § 38-10(f).

In 2004, the Goyonagas applied to the Board of Zoning Appeals for the City of Falls Church ("BZA") for a variance to enlarge and extend their home by adding a second story to the existing structure and an addition at the rear of the structure. The application represented that the proposed renovations and addition would remain within the existing, nonconforming side yard setbacks of the original home. No representation was made in this application that the renovations would require complete demolition of the front and side exterior walls of the home. On October 21, 2004, the BZA approved the application for a variance to permit the enlargement and extension as specified in the application.

Following approval of the variance, the Goyonagas submitted building plans to the city's zoning administrator and building and planning office. The zoning administrator found that the proposed depth of the addition to the rear of the home would have increased the structure's total coverage of the lot beyond what was permitted in an R1-B zone and required the Goyonagas to shorten the addition by 4 feet. Similarly, building officials required certain

4

modifications to the plans to be made, including a requirement that the portion of the existing walls that would not be demolished be reinforced to comply with current building codes and to support the proposed second story addition. Once these changes were made, the plans were approved by both the zoning and building officials, and a building permit was issued.

Construction commenced with the demolition of the portions of the original structure that were to be removed, including the roof, the back wall, and a portion of the side walls. It is not disputed that the portion of the original structure remaining following this initial demolition exceeded 25% of the structure as measured by its assessed value. Accordingly, at this point in the reconstruction, the requirements of Falls Church City Code § 38-6(c)(2) had not been violated.

The Goyonagas did not hire a general contractor, but oversaw the renovations themselves, employing individual contractors to perform the majority of the work. In this manner, the Goyonagas assumed the ultimate responsibility to assure compliance with the zoning and building codes as the work progressed. During the course of the demolition work, a building inspector determined that the structural integrity of the portion of the exterior walls that was to

5

have been retained was inadequate to support the proposed new construction.[2] The building inspector required additional demolition of the exterior walls, which would require more than 75% of the original structure to be removed. The Goyonagas directed a contractor to go forward with the additional demolition without contacting the zoning office to determine whether a further variance would be needed. As a result of the additional demolition, as the circuit court would subsequently find, "the original house [was] demolished[,] except for portions of the foundation." Following the demolition, work commenced with the construction of new exterior cinderblock walls along the same perimeter of the former structure.

On March 10, 2006, the zoning administrator conducted a site visit and determined that as "the original structure has been totally demolished . . . the work done to date is clearly outside the scope of work on the approved building permit and conflicts with Section 38-6 of the City Code

---

[2] The parties dispute whether the cause of the structural instability arose from latent defects in the original construction or was the result of improper demolition operations. Although the BZA contends that the circuit court resolved this issue in the BZA's favor, the record is not clear on that point. However, as will become apparent, it is not necessary for us to resolve this dispute, as it is not germane to the issues on appeal.

regarding replacement of nonconforming structures." On March 20, 2006, the zoning administrator issued a stop work order, and directed that the new construction was to be removed and that any new structure subsequently built would be required to comply with the setback and lot coverage requirements for new construction in an R-1B zone.

On April 10, 2006, the Goyonagas filed an appeal of the stop work order with the BZA. In their initial communication to the zoning administrator challenging the stop work order, the Goyonagas maintained that because the new construction would remain within the original footprint of the former home, the addition complied with the October 21, 2004 variance. The Goyonagas contended that "[b]y its conformance with the setback variances granted by the Board of Zoning Appeals, the subject building is no longer nonconforming and meets all setback requirements." (Emphasis added.)

The BZA conducted a hearing on the Goyonagas' appeal of the stop work order on May 4, 2006. At the hearing, the Goyonagas' counsel reiterated the position that the reconstruction would "put the [exterior] walls back in the same place" that the variance had already permitted and, thus, he contended that a home built within those limits should be treated as a conforming use of the property for

7

all purposes under the zoning ordinance.  In denying the Goyonagas' appeal, the BZA made an express finding that "the structure was, in fact, demolished."  On May 8, 2006, the zoning administrator advised the Goyonagas of the BZA's decision, and the stop work order remained in effect.

The Goyonagas filed a petition for writ of certiorari and declaratory relief in the Circuit Court of Arlington County, pursuant to Code § 15.2-2314, seeking review of the BZA's decision to deny their appeal of the stop work order. Specifically, the Goyonagas contended that the BZA had erred in determining "that the property constituted a nonconforming use[,] . . . that the removal and replacement of existing walls, in accordance with instructions by the City building inspector, nullified the variance previously granted by the BZA[, and in] its determination that the building was totally demolished" for purposes of applying Falls Church City Code § 38-6(c)(2).  The Goyonagas also sought a declaratory judgment that they had acquired a vested right to construct a home in accord with and as a result of the building plans being approved by the city zoning and building officials.  They contended that such a vested right accrued without regard to whether the home was a renovation of an existing structure or new construction.

8

The circuit court issued a writ of certiorari to the BZA.  In its return and subsequent answer to the Goyonagas' petition, the BZA denied that its findings were not supported by the record or that its decision to deny the appeal of the stop work order was arbitrary, capricious, or otherwise contrary to law.  The BZA also denied that the Goyonagas had acquired a vested right to construct a new home in accord with the building plans.  The BZA requested that the petition be dismissed.

On August 2, 2006, the circuit court conducted a hearing on the Goyonagas' challenge to the decision of the BZA upholding the stop work order and their request for declaratory relief.  Evidence in accord with the above-recited facts was received through the testimony of Mr. Goyonaga, a subcontractor and one of his employees, the zoning administrator, and a building inspector.  At the conclusion of the hearing, the circuit court stated that it had not heard "any evidence that the factual determinations of the BZA were incorrect or improper."  Thus, the court ruled that the BZA had properly determined that when the "original house was demolished, as is defined in the code and in common understanding, [the Goyonagas] lost the right to the nonconforming use on this particular piece of property."  The court further opined that the actions of

9

the zoning inspector and the building officials in approving the building plans did not give the Goyonagas a vested right to construct a nonconforming home on their lot. Accordingly, the court ruled that the decision of the BZA would be affirmed.

Before the circuit court entered the final order, the Goyonagas filed a motion for reconsideration, reiterating and expanding upon their position that under Code §§ 15.2-2307 and 15.2-2311 they had acquired a vested right to construct the home in accord with the building plans as approved by the zoning administrator and the building officials. They also reiterated their contention that "[t]he setback requirements for [the Goyonagas'] property were established by the [October 21, 2004] variance . . . . Thus, the [Goyonagas'] structure was no longer a nonconforming use."

On October 30, 2006, the circuit court conducted a hearing on the motion for reconsideration and denied the motion. In a final order entered the same day, the court affirmed the decision of the BZA upholding the zoning administrator's stop work order. We awarded the Goyonagas this appeal.

DISCUSSION

The standard of review applicable in this case is well established. "The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or that its decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance."[3] City of Suffolk v. Board of Zoning Appeals, 266 Va. 137, 142, 580 S.E.2d 796, 798 (2003). "A circuit court decision affirming a board of zoning appeals determination is also accorded this presumption of correctness on appeal to this Court." Id. at 142-43, 580 S.E.2d at 798; see also Cherrystone Inlet, LLC v. Board of Zoning Appeals, 271 Va. 670, 675, 628 S.E.2d 324, 236 (2006).

The Goyonagas first assert that the circuit court erred in affirming the decision of the BZA because the

---

[3] As of July 1, 2006, the provisions of Code § 15.2-2314 state that on a petition for certiorari to a circuit court, while "the findings and conclusions of the board of zoning appeals on questions of fact shall be presumed to be correct . . . [t]he court shall hear any arguments on questions of law de novo." 2006 Acts ch. 446. Because the petition for certiorari in this case was filed before the effective date of the amendment of Code § 15.2-2314, the circuit court would have applied the former version of the statute, and we will review the circuit court's judgment in light of this procedural posture of the case. See Adams Outdoor Advertising, L.P. v. Board of Zoning Appeals, 274 Va. 189, 195 n.3, 645 S.E.2d 271, 274 n.3 (2007).

11

October 21, 2004 variance "established new zoning regulations specific to this property" and, thus, it was thereafter to be treated as a conforming property subject to the limitations of the variance.[4]  We disagree.

The Goyonagas' assertion that the variance "establish[ed] new zoning regulations specific to this property" mischaracterizes the purpose and function of a variance.  "[V]ariances exist to relieve property owners from unnecessary or unreasonable hardship resulting from strict application of zoning provisions.  However, such relief is limited by Code §§ 15.2-2201 and -2309 to the

---

[4] In briefing this appeal, the Goyonagas contend that "[t]he distinction between a nonconforming use and a [conforming] use permitted by a variance was recently codified . . . in Code Section 15.2-2309."  Specifically, the Goyonagas note that the statute was amended to provide that "[n]otwithstanding any other provision of law, the property upon which a property owner has been granted a variance shall be treated as conforming for all purposes under state law and local ordinance; however, the use or the structure permitted by the variance may not be expanded."  2006 Acts ch. 264.  This amendment to Code § 15.2-2309 became effective July 1, 2006 after the BZA's decision had been rendered and while the petition for certiorari was pending before the circuit court.  Contrary to an assertion made by counsel for the Goyonagas during oral argument of this appeal, the courts do not apply amendments to the Code retroactively unless the authorizing legislation clearly indicates that it is the General Assembly's intent that we do so.  Adams v. Alliant Techsystems, Inc., 261 Va. 594, 599, 544 S.E.2d 354, 356 (2001).  Accordingly, the language of the 2006 amendment to Code § 15.2-2309 has no application in this case, and we will express no opinion as to its effect.

12

granting of variances from 'those provisions regulating the size or area of a lot or parcel of land, or the size, area, bulk or location of a building or structure.' " Adams Outdoor Advertising, Inc. v. Board of Zoning Appeals, 261 Va. 407, 415, 544 S.E.2d 315, 319 (2001). The variance granted by the BZA to the Goyonagas on October 21, 2004 comports with this principle. That variance permitted the Goyonagas, despite the nonconforming use of their property under Falls Church City Code § 38-6(c)(3), to improve and extend their home within the existing, nonconforming side yard setbacks.

The variance did not relieve the Goyonagas from having to comply with other aspects of the zoning ordinance that were not directly addressed by the application for the variance as approved by the BZA. The variance did not permit an increase in the maximum lot coverage limitations for a structure in an R-1B zone. Indeed, the Goyonagas did not and could not challenge the requirement of the zoning administrator that they reduce the length of the addition to the home by 4 feet, even though the addition was within the setbacks allowed by the variance.

Similarly, nothing in the variance as granted by the BZA under Falls Church City Code § 38-6(c)(3) can be interpreted as relieving the property from the application

13

of the requirement of Falls Church City Code § 38-6(c)(2) that a nonconforming structure cannot be "removed or demolished . . . or damaged by . . . any means whatever to an extent equal to seventy-five (75) percent of its assessed value for the year." Accordingly, we will affirm the judgment of the circuit court finding no error in the decision of the BZA with respect to the determination that the demolition of the Goyonagas' home, except for portions of the foundation, resulted in the loss of the right to continue the nonconforming use of the property.

The Goyonagas also contend that the circuit court erred in not granting them the requested declaratory relief and ruling that their reliance on the actions of the zoning administrator and building officials in approving the building plans submitted after the variance was granted afforded them a vested right to construct a home on the property in accord with those plans. They contend that this is so because the building plans submitted to the city zoning and building officials established that the exterior walls of the home would need to be reinforced in order to comply with current building code standards and the approval of the plans by the city officials constituted "significant affirmative governmental acts allowing development of a specific project." Code § 15.2-2307.

Thus, by relying on the approval of the plans and the subsequent instruction of the building inspector to "reinforce" the walls by replacing them, the Goyonagas contend that the statute provided them with a "vested right" to develop the property in accord with those plans once they had expended significant resources on the construction of the home.  Alternately, the Goyonagas contend that the zoning administrator's approval of the building plans ripened into a vested right 60 days after the approval was given because they "ha[d] materially changed [their] position in good faith reliance on the action of the zoning administrator."  Code § 15.2-2311(C). We disagree with both of these contentions.

With respect to the application of Code § 15.2-2307, that statute provides that a property owner who "(i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act" becomes vested with the right to develop the property in accord with that act regardless of "a subsequent amendment to a

15

zoning ordinance." Assuming, without deciding, that the approval of the building plans by the city officials constituted the "significant affirmative governmental act[] allowing development of a specific project" contemplated by the statute, it is plain that the zoning administrator's subsequent determination that demolition of the structure to its foundation violated Falls Church City Code § 38-6(c)(2) and resulted in the loss of the property's nonconforming status did not arise from "a subsequent amendment to [the] zoning ordinance."

The Goyonagas protest that it "makes no sense" that that Code § 15.2-2307 provides a vested right "only . . . if the City of Falls Church enacted a zoning ordinance change, but no vested right if the [z]oning [a]dministrator decides to change his position and apply the nonconforming use standard in [Falls Church] City Code § 38-6[(c)(2)] after he had approved the plans, building permits had been issued and construction had begun." This protest, however, reflects a fundamental misunderstanding of Code § 15.2-2307.

The clear intent of the statute is to provide a property owner with protection from a subsequent amendment to a zoning ordinance when the owner has already received approval for and made substantial efforts to undertake a

16

use of the property permitted under the prior version of the ordinance.  Here, even if it can be assumed that the zoning administrator was aware that complete demolition of the home was called for in the building plans, at least as a possible alternative to reinforcement of the existing walls, he did not have authority to permit the Goyonagas to violate Falls Church City Code § 38-6(c)(2) by completely demolishing a nonconforming structure and replacing it with new, nonconforming construction.  See Segaloff v. City of Newport News, 209 Va. 259, 262, 163 S.E.2d 135, 137 (1968) (city official cannot authorize a violation of zoning ordinance); see also Foster v. Geller, 248 Va. 563, 568, 449 S.E.2d 802, 806 (1994) (requirement for special use permit "could not be circumvented simply by adhering to conditions prescribed" by city official).  In short, Code § 15.2-2307 provides for the vesting of a right to a permissible use of property against any future attempt to make the use impermissible by amendment of the zoning ordinance; it is not intended to permit, nor does it provide for, the vesting of a right to an impermissible use under the existing ordinance.

Code § 15.2-2311(C), by way of contrast, does provide for the potential vesting of a right to use property in a manner that "otherwise would not have been allowed."  Snow

17

v. Amherst County Bd. of Zoning Appeals, 248 Va. 404, 407, 448 S.E.2d 606, 608 (1994). We will assume, without deciding, that here the zoning administrator's approval of the building plans constituted under the statute "a written order, requirement, decision or determination" that would not "be subject to change, modification or reversal . . . after 60 days have elapsed from the date" of that action. Code § 15.2-2311(C). The issue then is whether the zoning administrator's approval of the building plans constituted a waiver, albeit an improper one, of the requirements of Falls Church City Code § 38-6(c)(2). We conclude that the circuit court correctly determined that the evidence did not establish that the zoning administrator's approval of the building plans included an authorization to effect the complete demolition of the existing structure.

The burden of establishing the vesting of a right to an otherwise impermissible use of property under Code 15.2-2311(C) falls upon the property owner. Snow, 248 Va. at 407, 448 S.E.2d at 608. The Goyonagas, therefore, were required to show that the zoning administrator, in reviewing the building plans, would have understood that the home at least potentially was to have been completely demolished to its foundation and an entirely new structure was to have been erected in its place. The building plans

18

do not reflect any such potentiality.  To the contrary, even an exhausting examination of these plans as originally submitted necessarily would lead only to the single conclusion that the front and principal portions of both side walls of the existing structure were to be retained.[5] We therefore hold that the Goyonagas did not meet their burden of proof to establish that they could have reasonably relied upon the zoning administrator's approval of the building plans as authorizing them to completely

---

[5] In a further assignment of error, the Goyonagas contend that the circuit court erred in failing to admit into evidence an exhibit, a single line drawing from the building plans designated as "S101," that they contend established by a marginal note that the plans "permitted an alternative to retaining three existing exterior walls" of the property.  The BZA notes that two other copies of the same page from the plans appear in the record without the marginal note upon which the Goyonagas rely.  However, even assuming that the marginal note appeared on the copy of the plans reviewed by the zoning administrator, that single note would not alter our conclusion that the plans as a whole did not clearly establish that the home could be completely demolished to its foundation.  Accordingly, any error in failing to admit this exhibit was harmless.  For the same reason, we need not consider the Goyonagas final assignment of error addressing the circuit court finding that the building plans expressly "called for the preservation of 25% of the original house in accordance with [Falls Church City Code] Section 38-6[(c)(2)]."  The burden was not on the BZA to show that plans comported with the requirements of the zoning ordinance; rather, as we have stated, the burden was on the Goyonagas to establish that the plans were plainly contrary to the requirements of the ordinance, but were nonetheless approved by the zoning administrator.

demolish the home and replace it with a new, nonconforming structure. For these reasons, we further hold that the circuit court did not err in ruling that the Goyonagas did not have a vested right to continuing use of their property in a manner inconsistent with the current requirements of the zoning ordinance.

                           CONCLUSION

In summary, we hold that the circuit court did not err in ruling that the BZA properly determined that the October 21, 2004 variance did not result in the Goyonagas' property becoming a conforming use for purposes of applying Falls Church City Code § 38-6(c)(2). We further hold that the circuit court correctly determined that the Goyonagas failed to establish that they had a vested right to continue the nonconforming use of their property after the existing home had been completely demolished to its foundation. Accordingly, the judgment of the circuit court will be affirmed.

                                        Affirmed.