Present: Kinser, C.J., Lemons, Goodwyn, Millette, McClanahan
and Powell, JJ., and Russell, S.J.

TOWN OF LEESBURG, ET AL.

v.      Record No. 111658                    OPINION BY
                                        JUSTICE S. BERNARD GOODWYN
LONG LANE ASSOCIATES                         June 7, 2012
LIMITED PARTNERSHIP

CORNERSTONE CHAPEL

v.      Record No. 111662

LONG LANE ASSOCIATES
LIMITED PARTNERSHIP

              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                        J. Howe Brown, Judge

     In this appeal, we consider whether the circuit court

erred in finding that a locality needs the consent of a

neighboring property owner to rezone a parcel that was

originally part of an undivided property, to which certain

proffers applied.  We also consider whether a landowner can

acquire a vested right in a road shown on a town plan or in the

zoning classification of neighboring property.

                           Background

     In an action filed in the Circuit Court of Loudoun County,

Long Lane Associates Limited Partnership (Long Lane) challenged

ordinances adopted by the town council of the Town of Leesburg

(the Town) concerning property owned by an adjoining landowner.

The challenged ordinances rezoned property owned by Cornerstone

Chapel (Cornerstone), amended the Town Plan to remove a portion

of a public road (Tolbert Lane), which was to cross Cornerstone's property, and approved a special exception to permit Cornerstone to operate a day care center on its property.

Long Lane and Cornerstone own adjacent properties subdivided from a parcel formerly owned by High Point Associates (High Point). Prior to subdivision, High Point proffered, and the Town accepted, conditions on the entire parcel. The circuit court ruled that the Town lacked authority to approve Cornerstone's request to rezone its property or amend its zoning conditions without Long Lane's consent because Long Lane had a vested right in the completion of Tolbert Lane and the development set forth in the proffered conditions. The Town and Cornerstone appeal.

### Facts

In 1987, High Point applied to the Town for a zoning district map amendment to rezone 38.37 acres of land. High Point's rezoning request proceeded through the planning commission to the town council. High Point requested the property be rezoned to Town PEC (planned employment center) and added eleven enumerated proffers to its request (the ZM-98 proffers).

In 1988, the town council adopted an ordinance ("the High Point Rezoning Ordinance") rezoning High Point's property to

2

PEC and amended the Town's zoning district map accordingly. The rezoning ordinance adopted by the Town specifically stated that the rezoning was subject to the eleven enumerated conditions that High Point proffered in writing in accordance with former Code § 15-1.491(a) (now Code § 15.2-2303(A)).

The Town Plan included a cut-through roadway across the 38.37-acre property, Tolbert Lane, which, when completed, would connect Battlefield Parkway with Sycolin Road. One of the ZM-98 proffers required the applicant to "construct [and dedicate to the Town] the on-site streets, acceleration and deceleration lanes, and necessary turning lanes designed on" the rezoning plan, as subdivided sections of the property were approved for development.

In 1992, Long Lane purchased a 5.3-acre parcel subdivided from the 38.37-acre parcel owned by High Point. Long Lane built a commercial building on its property, which it leased to C&P Telephone Company (now Verizon).

To provide access to its property, Long Lane constructed an extension of Tolbert Lane. George Shute, Jr., a principal of Long Lane, testified that in extending Tolbert Lane across its property, Long Lane built the extension longer and wider than necessary to maintain ingress and egress to its property, in reliance on the dimensions required by the ZM-98 proffers.

After Long Lane purchased its property, the American Red Cross and Cornerstone purchased the remaining parcels subdivided from the High Point property. Cornerstone's parcel is 28.32 acres. Since the 1988 rezoning, the only building or development on the original 38.37-acre parcel has been on Long Lane's property.

In 2008, Cornerstone filed three applications to amend the zoning and conditions affecting its property in order to construct a church on its land. First, Cornerstone requested an amendment of the Town Plan to remove a proposed section of Tolbert Lane that was located on Cornerstone's property and had not yet been constructed. Second, Cornerstone requested a change in the zoning district from PEC to B-3 community retail, which allows a church as a permitted use. Third, Cornerstone requested a special exception to allow it to operate a daycare center on the church premises.

When considering the request to amend the Town Plan, the Town noted that its transportation needs had changed substantially between 1988, when the ZM-98 proffers were enacted, and 2008, when Cornerstone filed its application to amend the Town Plan. Originally, the Town intended Tolbert Lane to be substantially used as a cut-through to connect Battlefield Parkway with Sycolin Road. However, as other roads in the Town developed, Tolbert Lane evolved into a local

4

street, serving as an access street for the parcels in the original High Point 38.37 acres. As the Town no longer considered completion of Tolbert Lane necessary, it adopted Cornerstone's requested ordinance removing from the Town Plan the proposed portion of Tolbert Lane that was to cross Cornerstone's property. This resulted in Tolbert Lane ending at the cul-de-sac that Long Lane had constructed and dedicated to the Town.

The town council also adopted an ordinance approving the rezoning of Cornerstone's property from PEC to B-3 community retail. The ordinance amended the ZM-98 conditions affecting Cornerstone's property by removing them and instituting new conditions that Cornerstone had proffered as part of its rezoning application. Additionally, the town council approved Cornerstone's special exception application to operate a daycare center.

Shute and his attorney appeared at the public hearings before the planning commission and the town council and objected to Cornerstone's applications. Shute argued that the Town could not amend the application of the conditions required by the High Point Rezoning Ordinance without the consent of all owners of property originally included in the rezoning. Long Lane did not consent to the Cornerstone rezoning and proffer amendment because it did not want to lose the compatible zoning

that surrounded its property and the opportunity to have a public through-road.

Analysis

The circuit court declared Long Lane to have "a vested right to the completion of Tolbert Lane and the development set forth in the ZM-98 proffers approved by Town Ordinance . . . ." It ruled that the Town's approval of Cornerstone's request for rezoning was void and of no effect because it violated Long Lane's vested rights under the High Point Rezoning Ordinance and that the rezoning as well as the amendment to the Town Plan and the granting of the special use permit were thus "illegal, void and of no effect." We disagree.

Code § 15.2-2307, the vested rights statute, provides:

Nothing in this article shall be construed to authorize the impairment of any vested right. Without limiting the time when rights might otherwise vest, a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.

For purposes of this section and without limitation, the following are deemed to be significant affirmative governmental acts allowing development of a specific project: (i) the governing body has accepted proffers or proffered conditions

6

which specify use related to a zoning amendment
. . . .

The purpose of Code § 15.2-2307 is to provide "for the vesting of a right to a <u>permissible</u> use of property against any future attempt to make the use impermissible by amendment of the zoning ordinance . . . ." <u>Goyonaga v. Board of Zoning Appeals</u>, 275 Va. 232, 244, 657 S.E.2d 153, 160 (2008) (emphasis in original).

The Town approved the rezoning of the High Point property conditioned upon the ZM-98 proffers and specified the land use relating to the zoning amendment. The Town's approval of the proffers was a significant affirmative governmental act allowing development of the specific project provided for in the proffers. As a subsequent owner of a subdivided parcel of the property governed by the ZM-98 proffers, Long Lane was a beneficiary of the significant affirmative governmental act. Pursuant to Code § 15.2-2307, Long Lane has a vested right in the land use allowed by the High Point Rezoning Ordinance.

However, Long Lane claims not just a vested right concerning its own property, but also a vested right with respect to the zoning classification of property now owned by the Red Cross and Cornerstone. Specifically, Long Lane argues that it has a vested right not only in the land use specified by the previously passed zoning ordinance, but also in the

"development set forth in the ZM-98 proffer" approved by the Town that would result in a road to be built in the future, and in the compatibility of buildings that may be built in the future on adjoining property.  Thus, Long Lane claims a vested right in the land use of property it does not own.

Whether a landowner may acquire a vested right in the zoning classification or use of neighboring property or in a road shown on a town plan is a question of first impression for this Court.  This Court's case law addressing vested rights in future expectations or anticipated uses is instructive.

It is well established that a landowner has a right to continue in an existing use, even after the governing body changes the zoning classification, causing the use to become nonconforming.  Hale v. Board of Zoning Appeals, 277 Va. 250, 271, 673 S.E.2d 170, 180 (2009).  Also, " 'in limited circumstances, private landowners may acquire a vested right in planned uses of their land that may not be prohibited or reduced by subsequent zoning legislation.' "  Id. at 271, 673 S.E.2d at 180 (quoting City of Suffolk v. Board of Zoning Appeals, 266 Va. 137, 143, 580 S.E.2d 796, 798 (2003)) (emphasis added); see Code § 15.2-2307.

In contrast, "when a landowner has only a future expectation that he will be allowed to develop his property in accord with its current classification under the local zoning

8

ordinance, there is 'no vested property right in the continuation of the land's existing zoning status.' " Id. (quoting Board of Zoning Appeals v. Caselin Sys., 256 Va. 206, 210, 501 S.E.2d 397, 400 (1998)); see also City of Suffolk, 266 Va. at 143, 580 S.E.2d at 798 ("Generally, landowners have no property right in anticipated uses of their land since they have no vested property right in the continuation of the land's existing zoning status.") (emphasis added). Cf. Code § 15.2-2307. " '[T]he mere reliance on a particular zoning classification . . . creates no vested right in the property owner.' " Hale, 277 Va. at 272, 673 S.E.2d at 181 (quoting City of Suffolk, 266 Va. at 145, 580 S.E.2d at 799).

Long Lane claims it has a vested right in the ZM-98 proffers pursuant to Code § 15.2-2307. One cannot, however, acquire a vested right in a proffer. A landowner acquires a vested right to a land use that is the subject of a significant affirmative governmental act. Code § 15.2-2307. At best, Long Lane had a future expectation that pursuant to the High Point Rezoning Ordinance a road would be built as the surrounding property was developed, and that the buildings built on adjoining property would be compatible. Future expectations concerning zoning do not create vested property rights. City of Suffolk, 266 Va. at 143, 580 S.E.2d at 798.

The existence of vested property rights does not prohibit rezoning. Vested rights only protect the landowner's right to planned uses of his or her land which may not be prohibited or reduced by subsequent zoning. As a result, although Long Lane is protected from future changes regarding the use of its own property, it has no vested right as to its expectation that the neighboring properties would continue to develop in accordance with the zoning they had at the time Long Lane purchased its property and developed it in accordance with the ZM-98 proffers.

Further, Code § 15.2-2307 and relevant cases indicate that a landowner may only acquire a vested right as to use of his own property. Code § 15.2-2307 explicitly refers to the landowner subject to the zoning change, suggesting the vested right only applies to a particular landowner, as opposed to the aggregate of the property subject to the original significant affirmative governmental act. Similarly, this Court's cases interpreting Code § 15.2-2307 expressly refer to the landowner's property, as opposed to neighboring property owned by a different entity. See, e.g., Town of Vienna Council v. Kohler, 218 Va. 966, 976, 244 S.E.2d 542, 547-48 (1978) ("We observe that while the views of persons owning neighboring property should be considered, property owners have no vested right to continuity of zoning of the general area in which they

10

reside, and the mere purchase of land does not create a right to rely on existing zoning.") (emphasis in original). The Code and this Court's case law do not support the conclusion that a landowner may have vested rights in the zoning classification or land uses of his or her neighbor, even where the property was subdivided from a parcel which was rezoned subject to proffered conditions.

Long Lane also contends that the Town acted in contravention of Code § 15.2-2303(A) when approving Cornerstone's application. Code § 15.2-2303(A) provides:

> The governing body may also accept amended proffers . . . . Once proffered and accepted as part of an amendment to the zoning ordinance, such conditions shall continue in effect until a subsequent amendment changes the zoning on the property covered by such conditions.

In other words, once the governing body accepts voluntary proffers, such proffers become conditions of the rezoning and, once entered into law, the conditions become zoning regulations. Id.

Long Lane contends that "on the property covered by such conditions" in Code § 15.2-2303(A) refers to the undivided property originally owned by High Point, to which the ZM-98 proffers applied. Under Long Lane's theory, the Town cannot subsequently amend zoning relating to property governed by approved proffers unless all landowners subject to the proffers

11

consent.  Long Lane contends that Code § 15.2-2303(A) implicitly requires its consent because otherwise the Town would be imposing involuntary proffers upon it.

The ordinance changing the zoning of Cornerstone's property was a subsequent amendment that changed the zoning of part of the property covered by the previously accepted ZM-98 proffers.  As a result of the rezoning, the ZM-98 proffers properly no longer applied to Cornerstone's property.  See Code § 15.2-2303(A).

Long Lane's parcel was not rezoned and the ZM-98 proffers "continue in effect" because a subsequent amendment has not changed the zoning on its "property covered by such conditions."  See Code § 15.2-2303(A).  Although the rezoning peripherally changes Long Lane's expectations as to its property, it does not directly affect the zoning of Long Lane's property.  Because the Town did not impose any new proffers or conditions on Long Lane's property, the rezoning of Cornerstone's property did not subject Long Lane to any involuntary proffers.

It is undisputed that it is within the Town's authority to enact zoning ordinances.  See Code § 15.2-2285(A) ("The planning commission of each locality may . . . prepare a proposed zoning ordinance . . . .").  It is also undisputed

12

that it is within the Town's authority to amend zoning ordinances.  Code § 15.2-2286(A)(7) provides:

> Whenever the public necessity, convenience, general welfare, or good zoning practice requires, the governing body may by ordinance amend, supplement, or change the regulations, district boundaries, or classifications of property.  Any such amendment may be initiated (i) by resolution of the governing body; (ii) by motion of the local planning commission; or (iii) by petition of the owner . . . of the property which is the subject of the proposed zoning map amendment . . . .

The adoption of written proffers is a legislative act. Jefferson Green Unit Owners Ass'n v. Gwinn, 262 Va. 449, 458, 551 S.E.2d 339, 343 (2001) ("[A] zoning ordinance may include written proffers.  Thus, the proffers become part of the zoning ordinance.  As such, they are legislative enactments."). Legislative actions of a local government are

> presumed to be valid and will not be disturbed by a court absent clear proof that the action is unreasonable, arbitrary, and bears no reasonable relation to the public health, safety, morals, or general welfare.  If the reasonableness of the enactment is fairly debatable, a court will not substitute its judgment for that of the legislative body, and the legislation will be sustained.

City Council v. Harrell, 236 Va. 99, 101-02, 372 S.E.2d 139, 141 (1988).

The Leesburg Town Council had the authority to amend the High Point Rezoning Ordinance, in whole or in part.  When considering the rezoning application, the Town took into account the effect the zoning legislation would have on the

13

citizens of the Town. Long Lane was able to raise its concerns to the planning commission and town council before the Town approved Cornerstone's application.

There is no authority for the circuit court's ruling that the voluntary proffer requirement of Code § 15.2-2303(A) required all successors in title to High Point to agree prior to any portion of the subdivided parcel being rezoned. Long Lane had no vested right that deprived the Town of its legislative authority to enact zoning ordinances.

The Town acted pursuant to its statutory authority in rezoning Cornerstone's property and granting it a special use permit and there is no evidence that its actions in doing so were unreasonable. The circuit court erred in holding that the rezoning of Cornerstone's property and issuance of the special use permit were illegal and void.

In the instant case, the Town amended its Town Plan as a result of the Cornerstone rezoning application. In amending the Town Plan, the Town determined that it no longer desired to have Tolbert Lane intersect with Battlefield Parkway because other roads in the vicinity had developed. The Town's amendment of the Town Plan was a legislative act that was not unreasonable. Long Lane did not have a vested right in the construction of a road shown on the Town Plan and the Town did not need Long Lane's consent to amend its plan. The circuit

14

court erred in holding that the amendment to the Town Plan was null and void.

Conclusion

Accordingly, for the reasons stated in this opinion, we will reverse the judgment of the circuit court and enter final judgment for the Town and Cornerstone.

<u>Reversed and final judgment.</u>