Present: All the Justices

BOARD OF SUPERVISORS OF
PRINCE GEORGE COUNTY, ET AL.

OPINION BY
v.  Record No. 130279        JUSTICE ELIZABETH A. McCLANAHAN
January 10, 2014
JOHN B. MCQUEEN

FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
W. Allan Sharrett, Judge

In this appeal, we consider whether the circuit court erred in holding that the landowner, John B. McQueen (McQueen), acquired a vested right under Code § 15.2-2307 to develop his property in Prince George County (the County) as a cluster subdivision.  We conclude that the "compliance letter" McQueen received from the County zoning administrator, upon which his vesting claim was based, did not constitute a "significant affirmative governmental act" as required under Code § 15.2-2307 for a land use right to become vested.  Therefore, we will reverse the judgment of the circuit court.

I. BACKGROUND

A. The CLO Ordinance

The County's Board of Supervisors (the Board) in 2007 adopted a new zoning ordinance that included a set of provisions, entitled collectively the "CLO Cluster Overlay District" (hereinafter, the "CLO Ordinance"), permitting the

development of cluster subdivisions.[1]  CLO Ordinance §§ 90-332.2

through -332.16.  A cluster subdivision proposed in accordance

with the standards contained in the CLO Ordinance was a

"permitted use by-right."  CLO Ordinance § 90-332.4(A).  The

standards consisted of categories of both general and specific

requirements.  CLO Ordinance §§ 90-332.6 through -332.14.  The

four general standards, which are implicated here, pertained

only to minimum acreage, the provision of water and sewer, the

exclusion of conservation areas, and the number of dwelling

units allowed per acre.  CLO Ordinance §§ 90-332.6.

In the application process for developing a cluster

subdivision, the applicant was required to meet with the zoning

administrator to review the requirements for a proposed cluster

subdivision, arrange a site visit, and prepare a "property

resource map" of the proposed site depicting such items as, for

example, total acreage, slope percentages, flood plains,

historic structures and woodlands.  CLO Ordinance § 90-332.16(A).  The applicant was then required to submit a

preliminary plat in accordance with the County's subdivision

regulations.[2]  CLO Ordinance § 90-332.16(B).  Finally, upon the

---

[1] The CLO Ordinance was described as "offer[ing] an alternative to conventional subdivision development by allowing for compact clusters of housing units rather than spaced lots that encompass the entire property."  CLO Ordinance § 90-332.2.

[2] The following additional items were also required to accompany the preliminary plat under CLO Ordinance § 90-

County's approval of the preliminary plat, the applicant was required to submit a final plat in accordance with the County's subdivision regulations.  CLO Ordinance § 90-332.16(C).

### B.  McQueen's Proposed Development

McQueen, an owner of a large tract of land in the County, initiated plans to develop his property as a cluster subdivision.  In early May 2008, McQueen and his engineer "met informally" with Pamela Thompson (Thompson), the Deputy County Administrator and Interim Director of Planning, to review the requirements for such use of McQueen's property.  McQueen's attorney subsequently submitted an "application" letter to Thompson describing in general terms McQueen's proposed development of "approximately 250 clustered residential dwellings," and "request[ing] a formal meeting" as required under CLO Ordinance § 90-332.16(A).

McQueen, his engineer, and attorney, then met with Thompson on May 23, 2008.  McQueen presented Thompson with a document consisting of a combined resource map and draft of a preliminary plat of McQueen's proposed development, and the four of them reviewed it that day.  It was only after the May 23rd meeting, McQueen's engineer confirmed, that "we put together a formal

---

332.16(B): notation on the plat of all conservation and open space areas; deed restrictions and covenants that would apply to private streets, public services, open space, and cluster subdivision lots; and the location of the building lots to be conveyed.

submittal of the preliminary plat for the [C]ounty," which, he acknowledged, was filed on July 1. He further indicated that the draft of the preliminary plat "could have changed" between May 23rd and July 1.

After the May 23rd meeting, McQueen expected to receive "an approval letter within days" from Thompson. When that did not occur, McQueen filed a declaratory judgment action seeking a determination whether he was entitled to develop his property "by right" or only pursuant to a special exception. Shortly thereafter, McQueen nonsuited the action upon receiving a "compliance letter" from Thompson around June 19th.

## C. Thompson's Compliance Letter

In the compliance letter, Thompson recited the four general standards set forth in CLO Ordinance § 90-332.6 and indicated that McQueen's property met those standards. Thompson then stated, "[p]lease let this letter serve as notice that your property does meet the provisions of the CLO [O]rdinance for by-right development in Prince George County." (Emphasis added.) Thompson also advised that McQueen would "need to meet all other applicable provisions of federal, state, and local codes." In addition, she explained, "[o]nce final approval of the proposed development is obtained through the CLO [O]rdinance you will need to obtain Site Plan Approval and a Land Disturbance Permit prior to beginning any work on the site." According to

Thompson, the letter was not required by the CLO Ordinance, and it did not approve a specific project.

D. McQueen's Present Declaratory Judgment Action

Several months after Thompson issued the compliance letter, the Board repealed the CLO Ordinance. In response, McQueen filed this declaratory judgment action against the County and the Board (collectively, "the County"). McQueen sought a declaration that he obtained a vested right under Code § 15.2-2307 to develop his property "as a by-right cluster subdivision" in accordance with the terms of the CLO Ordinance.

Under Code § 15.2-2307, a landowner may establish a vested right in a land use when he "(i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act." The statute does not define what constitutes a significant affirmative governmental act. Instead, it provides a list of seven acts "deemed to be significant affirmative governmental acts."[3] Id. The list is

_____

[3] The seven "deemed" significant affirmative governmental acts in Code § 15.2-2307 consist of the following: (i) accepting proffers related to a zoning amendment; (ii) approving a rezoning application, (iii) granting a special exception or use

5

non-exclusive, however, as the statute expressly provides that the list is "without limitation."  Id.  At the time Thompson issued the compliance letter, the statute listed acts one through six; the seventh act was added by legislative amendment in 2010.  See 2010 Acts ch. 315.[4]

McQueen asserted that Thompson's compliance letter constituted a significant affirmative governmental act, that he relied in good faith on that act, and that he incurred extensive obligations and substantial expenses in diligent pursuit of developing his property as a cluster subdivision.  Therefore, McQueen concluded, he met the three elements set forth in Code § 15.2-2307 for the vesting of a right to use his property for that purpose.

As to the first statutory element, McQueen acknowledged that the compliance letter did not represent any one of the six significant affirmative governmental acts listed in Code § 15.2-2307 at that time.  Rather, McQueen contended, the letter

_____

permit, (iv) approving a variance, (v) approving a preliminary subdivision plat, site plan or plan of development, (vi) approving a final subdivision plat, site plan or plan of development, and (vii) issuing a written order, requirement, decision or determination regarding the permissibility of a specific land use that is no longer subject to appeal and that is no longer subject to change or reversal under Code § 15.2-2311(C).

[4] Code § 15.2-2307 was also amended in other respects by 2010 Acts ch. 698, however, those amendments are not germane to the issues considered in this appeal.

constituted a significant affirmative governmental act under this Court's case law, citing Board of Supervisors v. Crucible, Inc., 278 Va. 152, 158-61, 677 S.E.2d 283, 286-87 (2009) (applying the "without limitation" provision of the statute). McQueen argued that the letter was clear and unambiguous, not subject to change, and affirmatively approved his proposed development, thereby meeting the criteria set forth in Crucible for determining when a zoning administrator's letter may constitute a significant affirmative governmental act. See id. at 160, 677 S.E.2d at 287-88. In further support of this position, McQueen asserted that the letter represented a "determination of legislative compliance," leaving only ministerial approvals for his proposed development.

Alternatively, McQueen argued that the compliance letter met the terms of the seventh governmental action subsequently added to Code § 15.2-2307, and that this provision should be applied retroactively for the circuit court to reach that determination.

The County responded by arguing, inter alia, that Thompson's compliance letter was not in the nature of a legislative act, and did not constitute an unambiguous approval of McQueen's proposed development. Rather, the County asserted that it was simply a courtesy to McQueen to confirm that his property qualified for a cluster subdivision as a permissive use

7

by-right under the CLO Ordinance's general standards, and nothing more. Thus, the County contended, the letter did not constitute a significant affirmative governmental act, thereby negating McQueen's vesting claim.

Following an evidentiary hearing, the circuit court ruled in favor of McQueen, finding that he established each of the three elements required under Code § 15.2-2307 for a land use right to become vested. As to the first statutory element, the circuit court agreed with the parties that the issuance of Thompson's compliance letter did not fall within any one of the six significant affirmative governmental acts set forth in the statute at that time. Nor did the circuit court apply the seventh act retroactively, as urged by McQueen. Citing Crucible, the circuit court indicated that its ruling on the first statutory element was, instead, based on case law - pursuant to the "without limitation" provision of the statute. Code § 15.2-2307. The circuit court accordingly declared in its final order that McQueen's "land use rights [to develop his property as a cluster subdivision] have vested."

## II. ANALYSIS

The sole issue raised by the County on appeal is whether Thompson's compliance letter constituted a significant affirmative governmental act for purposes of Code § 15.2-2307 - a threshold determination in the circuit court's adjudication of

McQueen's claim of vested land use rights.  Crucible, the County argues, is closely analogous to the present case, and supports its position that the circuit court erred by holding the compliance letter satisfied this first element of the statute.

We agree with the County that this case is controlled by Crucible.  Similar to McQueen and his proposed cluster subdivision, the plaintiff in Crucible sought confirmation from the Stafford County zoning administrator that its proposed security training facility met the definition of a "school" under the local zoning ordinance in an A-1 zoning district.  If it met the definition, the facility could be constructed "on a 'by right' basis, i.e., without additional discretionary approval by the County."  278 Va. at 156, 677 S.E.2d at 285.  Cf., e.g., Byrum v. Board of Supervisors, 217 Va. 37, 41-44, 225 S.E.2d 369, 372-34 (1976) (addressing legislative discretion involved in issuing special use permits).

After meeting with the zoning administrator, the plaintiff in Crucible received a letter, titled "'Zoning Verification,'" in which the zoning administrator stated that plaintiff's proposed facility "'would be classified a "school" by definition in the Stafford County Zoning Ordinance,' and that the '[v]erification is valid as of [the date of the letter] and is subject to change.'"  278 Va. at 156, 677 S.E.2d at 285.  However, before

the plaintiff obtained approval of a site plan for the proposed facility, the Stafford County Board of Supervisors adopted a zoning ordinance that required a conditional use permit for locating a school in an A-1 zoning district.  Id.

Plaintiff filed a declaratory judgment action seeking a declaration that it had a vested right, pursuant to Code § 15.2-2307, to construct a school on its property "on a 'by right' basis."  Id. at 157, 677 S.E.2d at 285.  The trial court entered declaratory judgment in favor of the plaintiff on this theory based in part on the court's determination that the zoning verification letter constituted a significant affirmative governmental act "substantially similar and equally serious" to the six examples then listed in the Code section.  Id.  On appeal, this Court disagreed and reversed the judgment of the trial court.  Id. at 161, 677 S.E.2d at 288.

The Court explained in Crucible that when the particular act at issue, such as the verification letter, does not fall within one of the enumerated acts in Code § 15.2-2307 "we rely on this Court's case law to determine whether [the] particular act constitutes a significant affirmative governmental act."  Id. at 160, 677 S.E.2d at 287.  The Court then explained that "[t]he alleged significant affirmative governmental act should be interpreted according to the plain meaning of the language used in the act" and "the evidence to support the claim to [vested

10

land use] rights must be clear, express, and unambiguous." Id. (citing Hale v. Board of Zoning Appeals, 277 Va. 250, 274, 673 S.E.2d 170, 182 (2009)). Evidence of "only a future expectation" that the landowner will be allowed to develop his property in accordance with a current zoning classification under the ordinance is therefore insufficient to establish a vested property right in the continuation of the property's existing status. Id. (quoting Hale, 277 Va. at 271, 673 S.E.2d at 180). Furthermore, "statements of the zoning board's general support of the plan and informal assurances of future approval are not enough to constitute a significant affirmative governmental act." Id. (citing Board of Zoning Appeals v. CaseLin Sys., Inc., 256 Va. 206, 212-13, 501 S.E.2d 297, 401-02 (1998)).

Based on these principles, the Court concluded that the statement of zoning classification contained in the zoning administrator's verification letter to the plaintiff was not a significant affirmative governmental act. Id. at 161, 677 S.E.2d at 288. The Court reasoned that, "[a]ccording to the plain meaning" of the language in the verification letter, the zoning administrator did not "affirmatively approve" the plaintiff's project, and made "no commitment" to it. Id. at 160, 677 S.E.2d at 287. "The zoning administrator simply answered the question concerning the classification of [plaintiff's] project according to the Stafford County Zoning

11

Ordinance in place on the date the request was made," and added that "the verification was subject to change."  Id.

Like the "verification letter" for the proposed project in Crucible, the "compliance letter" in this case did not affirmatively approve McQueen's proposed development of a cluster subdivision.  Nor did it make any commitment to McQueen regarding this project.  Rather, the compliance letter confirmed that McQueen's proposed development met the general standards for a cluster subdivision.[5]  By definition, such confirmation was essentially limited under CLO Ordinance § 90-332.6 to a determination of whether the proposal met the requirements for minimum tract size and maximum number of residential units per acre - a simple mathematical calculation.  Because McQueen's proposal complied with those standards, Thompson advised McQueen in the compliance letter that he was entitled to pursue his project as a matter of right, i.e., without discretionary approval by the County.

---

[5] Our analysis of the compliance letter is unaffected by the fact that McQueen was required under CLO Ordinance § 90-332.16 to meet with Thompson prior to preparation of the preliminary plat to review the requirements for a cluster subdivision, and to prepare a "property resource map" of his property (merely depicting the property in its undeveloped state), both of which occurred before the letter was issued.  Neither the meeting nor McQueen's preparation of the map and presentation of it to Thompson directly resulted in anything that could be characterized as a significant affirmative governmental act vis-à-vis the compliance letter.  Indeed, no specific action was required of Thompson under the ordinance in response to either the meeting or presentation of the map.

That, of course, was far short of the "clear, express, and unambiguous" approval of, or commitment to, a specific plan of development by McQueen as required for the creation of a vested development right.[6] Crucible, 278 Va. at 160, 677 S.E.2d at 287.

Manifestly, McQueen's right to so pursue his project was not dependent upon his receipt of the compliance letter from Thompson. The CLO Ordinance did not require McQueen to seek such confirmation, nor did it require Thompson to provide it. As the County correctly contends, McQueen's right to pursue his project as a "permitted use by-right" pursuant to the express terms of CLO Ordinance § 90-332.4(A) did not derive from a discretionary act of a local zoning administrator, but rather the legislative action of the Board in adopting the CLO Ordinance.[7]

---

[6] The first governmental approval required under the CLO Ordinance was an approval of the landowner's preliminary plat of a proposed cluster subdivision. CLO Ordinance § 90-332.16(B). With the filing of the preliminary plat, the landowner was, for the first time, required to account for the numerous specific standards for the project under the CLO Ordinance along with the County's subdivision regulations. McQueen did not file his preliminary plat with the County until several days after Thompson issued the compliance letter. Thus, the letter could not have been interpreted as some implied approval of the plat. Nor did Thompson make any mention of an earlier draft of the preliminary plat in her letter.

[7] McQueen alternatively argues, as he did below, that the issuance of the letter would constitute the seventh significant affirmative governmental act added to Code § 15.2-2307 in 2010,

III.  CONCLUSION

For these reasons, we conclude that the zoning administrator's issuance of the confirmation letter was not a significant affirmative governmental act.  The circuit court thus erred in holding that McQueen acquired a vested right under Code § 15.2-2307 to develop his property as a cluster subdivision.  Accordingly, we will reverse the judgment of the trial court, and enter final judgment for the County.

<u>Reversed and final judgment</u>.

---

which we should apply retroactively.  Because the General Assembly expressed no intent that the statute be applied retroactively, we will not do so.  <u>Goyonaga v. Board of Zoning Appeals</u>, 275 Va. 232, 241 n.4, 657 S.E.2d 153, 258 n.4 (2008); <u>Adams v. Alliant Techsystems, Inc.</u>, 261 Va. 594, 599, 544 S.E.2d 354, 356 (2001).