# MICHAEL C. NATRELLA, ET AL.

## V.

# BOARD OF ZONING APPEALS OF ARLINGTON COUNTY, ET AL.

Record No. 821787

June 13, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, Thomas, JJ., and Harrison, Retired Justice.

*Ira M. Lechner (Lechner and Butsavage, P.C.,* on brief), for appellants.

*Jerry K. Emrich (Walsh, Colucci, Malinchak, Emrich and Lubeley,* on brief), for appellees.

THOMAS, J., delivered the opinion of the Court.

Michael C. Natrella and others, residents of Shirlington House Apartments in Arlington, appeal a decision of the trial court which upheld a ruling by the Board of Zoning Appeals of Arlington County (the Board) granting the application of the owners of Shirlington House (the Owners) for certain zoning variances which would permit them to convert Shirlington House from rental apartments to condominiums. All the evidence was developed in the proceeding before the Board. The trial court based its ruling upon the certified record of proceedings from the Board and upon argument of counsel.

On appeal, Natrella makes three assignments of error, all based on sufficiency of the evidence. He contends there was insufficient evidence on the following issues:

A.  Whether the inability to convert to the condominium form of ownership constituted an undue hardship.
B.  Whether any such undue hardship was shared generally by other properties in the same zoning district and the same vicinity.
C.  Whether the granting of the variance would be of substantial detriment to adjacent property or would change the character of the zoning district.

In essence, Natrella submits that the trial court did not have sufficient evidence to make the findings required by Code § 15.1-

495(b) as a prerequisite to granting a variance. In our opinion, Natrella's assignments of error are without merit. Therefore, we will affirm the judgment of the trial court.

The facts are these: Shirlington House was built in the early 1960s. At the time it was built, it was thought to be in compliance with all then-existing zoning requirements. The height of the building is 10 stories and 88.4 feet; in 1962, this height clearly conformed to then-existing regulations. According to the Owners, the building is located on 347,356 square feet of land. In 1962, however, a building with the number of units existing at Shirlington House would have needed a total land area of 352,800 square feet. In 1962, this discrepancy was not noticed by the zoning authorities because several different figures for land area were in the record and all appeared to exceed requirements. However, based upon the Owners' acreage figure, the building was slightly out of conformity with the 1962 density requirement.

Further, a garage at Shirlington House was set back, at one point, only 24.2 feet from the property line instead of the 25 feet required by the zoning ordinance in effect at the time of the application for variance. Also, two freestanding signs were set back 11.6 feet and 12 feet, respectively, instead of the required 15 feet. Finally, one curb cut was 57 feet wide instead of 30 feet wide as required.

Though the building was essentially in conformity with the zoning ordinance in place at the time it was built, as that ordinance was amended, the building conformed less to the ordinance's requirements. As a result, by 1981, when the Owners applied for the variances, the building height could not be brought into conformity without removing the top four stories and 28.4 feet. Nor could the required density be achieved without acquiring 50,000 additional square feet of land or eliminating certain apartment units.

In a report to the Board, the Zoning Administrator stated that all of the requested variances were for existing conditions and no new construction was involved in any of the requests. The Zoning Administrator recommended that the variances be granted on condition that the density of the building — that is, the number of units in relation to the total land area — be brought into compliance with the 1962 zoning ordinance.

At a hearing before the Board, the Owners' representative testified that it was the Owners' desire to convert Shirlington House to the condominium form of ownership. He pointed out that the re-

quested variances would merely "confirm conditions which have existed over the past 19 years." He noted that a strict application of the zoning ordinance would prohibit "the identical use of the property but under a different form of ownership." He also stated that there is "a considerable difference in value between property used in a rental mode and property which can be sold to individual purchasers in a condominium mode."

With regard to whether the hardship described by the Owners was shared by others, their representative said the hardship was not so shared because Shirlington House was the "only building of its size and zoning category" in the particular area. Further, he testified that there would be no substantial detriment to adjacent property "because the existing use of the building will simply be continued. The building will be maintained and continue to exist. No major renovations are planned for the structure." In response to questions from the Board, the witness reiterated that there were no structural changes being made to the building that required the variances.

The testimony from the tenants and their representative was essentially that the variances should not be granted because the conversion of Shirlington House to condominiums would result in the loss of housing for the elderly and for those on moderate incomes. The tenants' representative argued that pursuant to Code § 15.1-495, the Board was required to consider the public interest before granting a variance and that it would not be in the public interest to grant the variances. More specifically, he stated that "it is not in the public interest of the citizens of this community to lose the moderate-income housing; to have the elderly displaced."

The tenants' representative also questioned whether the Owners had established any hardship. He urged the Board to review the Owners' financial records. He suggested that if the Owners were making a profit renting the building then there was no hardship. He also suggested that the question of condominium conversions was of a recurring nature and that the matter should be before the County Board of Supervisors as opposed to the Board of Zoning Appeals. He suggested further that the variances would result in a detriment to the land use plan of the community because the building did not meet density requirements. He described the request for variances as the "grossest case" that ever had come before the Board because it involved "[f]our stories and 50,000 sq. ft."

Other witnesses amplified the general theme of losing moderate-income housing and housing for the elderly. One witness said that if the building is converted to condominiums there will be a change in the character of the people living there in that the new condominium owners will demand more room for tennis and other purposes. That witness said there will be increased land use with conversion to the condominium form of ownership. Another witness said that denial of a "desire" to convert to condominiums did not amount to confiscation of the Owners' property.

The Owners' representative then stated that the 1962 density requirements would be met. This would be done by eliminating some units.

The Zoning Administrator answered questions from the Board and said that the building's height complied with the 1962 zoning ordinance and that the 57-foot-wide curb cut did not present a hazard.

The Chairman of the Board commented that the freestanding signs had not caused any trouble in the 18 years they had been in use. The Vice-Chairman then told the audience that social concerns were not to be addressed by the Board in deciding on the variances. He explained that the Board operated under the authority of Code § 15.1-495. Then he remarked: "We are giving them permission only to have their building declared in conformity as it was in 1962." The variances were granted.

The case was appealed to the circuit court, which affirmed the Board's decision. In a letter opinion, the trial court stated that it was of opinion that the representations and submissions made to the Board were "sufficient to permit that body to make its findings in the granting of the use permit." The trial court made specific reference to Code § 55-79.43 stating that pursuant to that statutory provision "a condominium may not be treated differently from a physically identical project under a different form of ownership." The trial court then pointed out that "[i]t must be remembered that no structural changes are contemplated except those relatively minor ones imposed by the Board. The structure and its appurtenant use to the land will remain unchanged."

In a statement of facts signed by the trial court, the court commented on the Owners' argument in support of their request for variances. The court wrote as follows:

The Defendants did not argue that a difference in value, alone, justified the variance. The major argument advanced was that the use of land would be unreasonably restricted if the owners could not convert to the condominium form of ownership since the conversion would not cause an additional land use impact with regard to zoning nonconformities. The Defendants argued that this unreasonable restriction on the use of land was an undue hardship.

■ At the outset it is important to note the posture of this case on appeal. Natrella appeals an adverse ruling of the trial court which affirmed an adverse ruling of the Board. The decision of the Board carried with it the presumption of correctness. The burden was upon Natrella, at the trial court, to overcome the presumption and to establish that the Board erred. *See Bd. of Zoning App.* v. *O'Malley*, 229 Va. 605, 331 S.E.2d 481 (1985). In this appeal, the burden is upon Natrella to overcome the presumption of correctness accorded both the decision of the Board and that of the trial court. *See Fairfax County* v. *Jackson*, 221 Va. 328, 334, 269 S.E.2d 381, 385 (1980); *Loudoun Co.* v. *Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 103 (1980). That burden is a difficult one and was not met by Natrella.

Natrella's argument on his first assignment of error is essentially in two parts. He contends first that the wrong test was applied in determining undue hardship. He next contends that there was no evidence adduced on the issue of undue hardship. We disagree.

Natrella relies principally upon *Packer* v. *Hornsby*, 221 Va. 117, 267 S.E.2d 140 (1980), for the proposition that in order to prove undue hardship a party seeking a variance must establish "a hardship approaching confiscation" *and* that use of the land will be "effectively prohibited or unreasonably restricted." Natrella argues that the thrust of *Packer* is that "a hardship does not exist when the property can be utilized in a reasonable manner under existing zoning regulations." From this premise he argues that because Shirlington House is returning a profit as a rental apartment complex, no hardship exists that would support the grant of a variance. Natrella misunderstands the test that applies in determining unnecessary hardship.

■ To determine the test for granting variances, we look to Code § 15.1-495(b). There it states that a zoning board is author-

ized to grant variances where "owing to special conditions a literal enforcement of the provisions will result in unnecessary hardship." The balance of subsection (b) defines unnecessary hardship. It is written in the disjunctive and says: "effectively prohibit" the use of the property; or "unreasonably restrict the use of the property;" or "where the board is satisfied . . . that granting of such variance will alleviate a clearly demonstrable hardship approaching confiscation." Subsection (b) then goes on to set forth the findings the board must make in order to grant a variance.

An analysis of Code § 15.1-495(b) shows that Natrella is wrong to suggest that the only way to establish unnecessary hardship is to prove "a clearly demonstrable hardship approaching confiscation." Nor do the cases from this Court support that conclusion. Contrary to Natrella's contentions, neither *Packer* nor *Bd. of Zoning App.* v. *Bond*, 225 Va. 177, 300 S.E.2d 781 (1983), supports his argument. In *Packer*, we analyzed subsection (b) and pointed out that "unnecessary hardship" was defined in the disjunctive. We noted there that "an applicant [must] show the existence of *at least* one of several 'special conditions' which would cause compliance with a zoning ordinance to result in an 'unnecessary hardship.'" 221 Va. at 121, 267 S.E.2d at 142 (quoting *Tidewater Utilities* v. *Norfolk*, 208 Va. 705, 710-11, 160 S.E.2d 799, 802-03 (1968)) (emphasis added); *See Bond*, 225 Va. at 180, 300 S.E.2d at 782. Proof of an unreasonable restriction on the use of the property can, standing alone, establish unnecessary hardship. *See Board of Zoning Appeals* v. *Fowler*, 201 Va. 942, 114 S.E.2d 753 (1960).

Natrella contends further that whatever the proper test, there was no evidence at all of any hardship to the Owners except a statement by the Owners' attorney that the differential in value of the property between rental use and sale of condominiums was so great as to constitute "a hardship unreasonably restricting the use of the property or a hardship approaching confiscation." Natrella submits that because there was no evidence of hardship, the trial court's decision must be based on a "determination that the inability to convert to condominiums is a hardship *per se*." Natrella argues that if the ruling was based on a *per se* determination of hardship, then the trial court ignored the provisions of Code § 55-79.43. Natrella explains further that in reliance upon Code § 55-79.43, the trial court erroneously concluded the variance should be granted so long as there would be no structural changes in the

building and its appurtenant use to the land will remain unchanged.

■ With regard to sufficiency of evidence of unnecessary hardship, the Owners submit that there was sufficient evidence to establish unreasonable restriction on the use of their property. They point to two items of proof. First, they contend they established that the property was more valuable when converted to the condominium form of ownership than when used as rental property. The Owners submit that *Azalea Corp. v. City of Richmond*, 201 Va. 636, 112 S.E.2d 862 (1960), permits such proof.

In *Azalea Corp.*, the corporation owned 40 acres of land with 8.2 acres lying in the City of Richmond and the balance in Henrico County. The corporation sought to develop a shopping center. It wanted to build access roads across the land lying in Richmond to serve the commercial facility which would be built on the balance of the land in the County. The strip of City land was zoned residential. The City refused to grant a variance. We reversed. One issue was whether the trial court should have excluded evidence that the land was more valuable with the access and less valuable without it. We wrote as follows on that point:

> The authorities generally agree that *financial loss*, standing alone, cannot establish an extraordinary or exceptional situation or hardship approaching confiscation sufficient to justify the granting of a variance of a zoning regulation, but it *is a factor or an element to be taken into consideration and should not be ignored.*

*Id.* at 641, 112 S.E.2d at 866 (emphasis added). We are of opinion that if evidence of relative value of property is relevant to the issue of hardship approaching confiscation, it is likewise relevant to the issue of unreasonable restriction on the use of property. We emphasize, however, what we said in *Azalea Corp.*, that is, such financial evidence standing alone cannot establish unreasonable restriction on use. The trial court properly considered the financial impact that would be occasioned by denying the variances.

The Owners' second element of proof of unreasonable restriction on use stems from the effect of Code § 55-79.43. The 1975 version of Code § 55-79.43 provides, in pertinent part, as follows:

> *No zoning or other land use ordinance shall prohibit condominiums as such by reason of the form of ownership inher-*

*ent therein. Neither shall any condominium be treated differently by any zoning or other land use ordinance which would permit a physically identical project or development under a different form of ownership.* No subdivision ordinance in any county, city or town in the Commonwealth shall apply to any condominium or to any subdivision of any convertible land, convertible space, or unit unless such ordinance is by its express terms made applicable thereto. Nevertheless, counties, cities and towns may provide by ordinance that proposed conversion condominiums and the use thereof, which do not conform to the zoning, land use and site plan regulations of the respective county or city in which the property is located, shall secure a special use permit, a special exception, or variance, as the case may be, prior to such property becoming a conversion condominium.

(Emphasis added.) This provision is part of the Condominium Act.

As the trial court stated, "The major argument advanced was that the use of land would be unreasonably restricted if the owners could not convert to the condominium form of ownership since the conversion would not cause an additional land use impact with regard to zoning nonconformities." The Owners' counsel was asked during oral argument to articulate the unreasonable restriction on his client's property. He responded as follows:

The unreasonable hardship is that the conversion of the property to a condominium of the same structure, the same number of units will not have a land use impact. And it is unreasonable to prohibit a change in the form of ownership when the conversion will not have a land use impact.

He went on to add that the difference in value is also a factor.

There is a sharp dispute between the parties concerning the way in which Code § 55-79.43 bears upon the application for variances. Natrella argues the statute does not change traditional rules concerning the grant of variances. According to him, the proof requirements of Code § 15.1-495 are unaffected. Thus, Natrella submits, the fact that there will be no land use impact does nothing to prove unnecessary hardship because the lack of land use impact has never been recognized as a way of proving hardship.

Natrella argues on brief that Code § 55-79.43 requires that a variance be secured before a condominium conversion can take place. He contends that if the inability to convert to condominiums is a hardship *per se*, then there would have been no need for the provision. He argues that through Code § 55-79.43, the General Assembly "*did not* create any different or less stringent requirements for obtaining a variance . . . for a condominium conversion than are specified in Code § 15.1-495(b) for obtaining a variance . . . in garden-variety zoning and land use cases which do *not* involve condominium conversion."

Natrella's argument concerning the impact of Code § 55-79.43 is deficient in several respects. First, the Owners do not contend that § 55-79.43 means that any time a conversion is contemplated and a variance is requested the variance must be granted. The Owners' argument is not that inability to convert to condominiums amounts to a hardship *per se*. They contend that where a building has lawfully operated as an apartment as a nonconforming use *and* where the *only* change in the building will be in the form of ownership *and* that change will have no land use impact, then given the language of Code § 55-79.43, it would be unreasonable to restrict the property to use as rental property.

Second, Natrella, on brief and in oral argument, consistently ignored the language at the beginning of the statute prohibiting different treatment for a "physically identical project or development under a different form of ownership." He focused his entire argument on the latter portion of the statute which says localities may require variances for proposed condominium conversions which do not conform to zoning and other requirements. This approach fails to give effect to all the language in the statute.

Third, when pressed, Natrella's counsel argued that the purpose of Code § 55-79.43 is to provide that when a building is switched from rental property to use as a condominium, it must be brought "up to code, to snuff, in terms of existing zoning and land use regulations." When asked whether that meant that property operating as rental apartments could never be converted to condominiums counsel responded that such property could be converted if brought into conformity with existing law. The obvious defect in this last argument is that if a piece of property is brought into conformity with existing zoning laws, then no variance will be needed and Code § 55-79.43 would not come into play at all.

Were we to accept Natrella's reading of Code § 55-79.43, we would have to either ignore a portion of that statute or ignore the statute in its entirety. We cannot do either. As we said in *Jones* v. *Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984), a case involving statutory interpretation:

> The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd. On the contrary, it is well established that every act of the legislature should be read so as to give reasonable effect to every word and to promote the ability of the enactment to remedy the mischief at which it is directed.

We reject Natrella's argument that Code § 55-79.43 has no effect upon Code § 15.1-495(b).

The Owners argue that Code § 55-79.43 is meant to prevent discrimination against condominiums where the only difference from other buildings is the form of ownership. The Owners further argue that the statute clearly contemplates conversion of existing structures. The Owners contend, in essence, that to give effect to Code § 55-79.43, zoning boards should consider each condominium conversion individually and determine whether granting a variance to permit a conversion would result in a land use impact. The Owners suggest that where the conversion to condominiums has an adverse land use impact the variances may not be granted. But in a case such as this, it would be an unreasonable restriction on the use of the property to say that it can be owned and used for rental purposes but the identical structure with no attendant changes in land use impact cannot be owned and sold as condominiums. We agree.

In order to give effect to Code § 55-79.43 and § 15.1-495(b), the former must be read to impact upon the latter and to bear upon what must be established in order to prove unnecessary hardship. That the two statutes must be read in harmony is an outgrowth of the rule that every legislative enactment must be given full effect unless it is impossible to do so. That Code § 55-79.43 impacts upon what is required to secure a variance under § 15.1-495(b) stems from the rule of construction that a specific statutory provision takes precedence over a general provision addressing the same subject.

Code § 55-79.43 says a "physically identical project or development" should not be treated differently for zoning purposes based on its being owned as a condominium as opposed to some other form of ownership. Thus, the latter portion of that statute which, by implication, incorporates the provisions of § 15.1-495(b), incorporates those provisions only in such manner that they do not impair the protection against discrimination accorded condominiums in the opening sentences of § 55-79.43. The result is this: Where a project is physically identical it is accorded special protection under § 55-79.43. When the Owners of such a project apply for a variance, if the physically identical project proves to have no impact upon land use — the thing which zoning is aimed at protecting — then there is no reason not to grant the variance. Stated differently, where a project or development is physically identical, where its impact on land use is the same, and where the variance requested is to confirm existing legally permitted nonconformities, then it is an unreasonable restriction on the use of that property to deny its owner the right to convert to condominiums.

With regard to Natrella's first issue, he failed to meet his burden of proof that the evidence was insufficient to establish undue hardship. In our view, the evidence was sufficient.

■ There is plainly no merit to Natrella's second assignment of error which states that the evidence was insufficient to support the finding that the hardship to the Owners' property was not shared generally by other properties in the same zoning district and the same vicinity. In his report to the Board, the Zoning Administrator made this statement: "Since this is the only building of this size and zoning in the area, the hardships are not shared generally by other properties in the same vicinity." In addition, the Owners' representative testified before the Board as follows: "[T]his is the only building of its size and zoning category in this area." Natrella's evidence did not dispute this. There was sufficient evidence to support the finding that the hardship was not generally shared.

■ Nor does Natrella's third assignment of error have merit. In our view, under the circumstances of this case, proof that the conversion would have no adverse land use impact plainly establishes that granting the variances would not result in substantial detriment to the adjacent property or result in a change in the character of the district in which the property is located.

For all the foregoing reasons, the judgment of the trial court will be affirmed.

*Affirmed.*