[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
On or about January 19, 1995, the defendant Charles Street Associates Limited Partnership applied to the defendant, Meriden Planning Commission for a certificate of approval for a site plan regarding its property located at 122 Charles Street in Meriden.
By means of that application, the applicant sought approval of site plan substituted for a plan which was originally approved on September 11, 1986 and revised with the Commission's approval as recently as April 13, 1994. Specifically, the applicant sought approval to reconfigure a proposed apartment complex to include twenty-four "elderly" and fifty-six "market units" instead of eighty "market units."
The most recent proposal to change the eight year old site plan was filed approximately two weeks after oral argument before this court in a zoning appeal challenging the validity of the Commission's April 13, 1994 action. In Heritage House Associatesv. Charles Street Limited Partnership, (Docket CV94-0360561S(X20) this court set aside an earlier site plan approval. In essence the court determined that the April 13, 1994 action of the Commission was illegal because the 1986 site plan upon which it was based had expired by operation of law. Since the site plan had, in the opinion of the court, expired, the new complex had insufficient parking as required by current regulations and had no protection against the need to comply with current regulations because of the expired site plan.
The site plan previously disapproved by this court contained eighty proposed units. In accordance with § 213-41K that multifamily dwelling project would require 160 parking spots. The CT Page 8735 referenced section requires two parking places per dwelling unit for "multifamily dwellings". The same section requires one parking spot for every three dwelling units for "multifamily housing for elderly." Thus the new proposal, if otherwise proper, would require 112 parking places for the fifty-six "market units" and eight parking places for the "twenty-four elderly units" for a total of 120 parking places. The proposal has the required 120 spaces.
AGGRIEVEMENT
The plaintiff Heritage House Associates is statutorily aggrieved by virtue of its ownership of the apartment complex known as 447 Broad Street abutting the defendant's property.
ISSUES
The plaintiff raises the following issues:
1. The defendant is attempting to amend a site plan which the court has already ruled invalid and therefore the site plan may not be amended.
2. The defendant's entire project depends upon the validity of a variance which was not recorded in accordance with the recording statute pertaining to variances and therefore the variance may not be used as the basis for the project.
3. The subject variance was granted for the building of "condominiums" and since this is not at present a condominium project, a "multifamily housing project" may not be built relying on a variance for condominiums.
4. The defendant has adequate parking only if he may combine the "market units" with the "elderly units" so as to reduce his parking needs from 160 places to 120 places. However, the parking requirements of § 213-41K are either unconstitutionally vague because they do not define "elderly" or in the alternative "elderly units" may not be combined with market units in the manner here proposed so as to reduce the parking requirement.
DISCUSSION
The court finds that what was submitted to the defendant Commission was in fact a new site plan. The Commission's letter CT Page 8736 to the applicant dated February 13, 1995 says that the Commission "voted to approve the new certificate of approval application." More importantly the plan as presented, although requiring a valid variance, complies with all current zoning regulations if the court rules for the defendant on the various parking issues. But for the need for the variance, the Commission could legally grant this application independently of any prior approvals. The court is somewhat concerned that the applicant relied on a previous approval by the Meriden Inland Wetlands and Watercourses Commission which related to the 1994 revised site plan which the court has set aside. However the court notes that the Meriden Director of Planning and Development in a letter dated February 13, 1995 indicated that "all conditions of the April 13, 1994 approval remain in effect."
In its earlier decision dated February 6, 1995, this court struck down the earlier site plan because it found that neither the site plan approval nor the variance protected the developer from the need to comply with current parking requirements. No issues concerning wetlands had been raised at that time. As the plaintiff goes to great pains to point out, the present application is virtually identical to the earlier application in all respects except parking. Under these circumstances the court is not prepared to rule that this is an amendment to a previously invalidated site plan simply because there is reliance upon the wetlands approval granted incident to the previous site plan.
The plaintiff attacks the validity of the variance in two regards. First the plaintiff argues that the variance was not recorded in accordance with § 8-3d. That section requires that the variance be recorded and that the recording include information concerning "the zoning bylaw, ordinance or regulation which is varied by its application." Section 8-7 provides that a variance granted by the local zoning board of appeals "shall become effective upon the filing of a copy thereof . . . in accordance with the provisions of § 8-3d."
The court notes that the apparent purpose for the recording of the variance is to give notice to persons searching the land records of its existence and that it applies to a specific property. The contents of the notice required by the statutes are to permit identification of the property to which the variance applies. Quite simply, the plaintiff is not affected by the fact that the notice of the variance recorded in the land records in 1986 does not specifically mention § 610 of the zoning CT Page 8737 regulations. The plaintiff was well aware of exactly what variance was granted by the zoning board of appeals and that that variance allowed up to 128 residential units in the M-2 industrial zone. Although the plaintiff, or its predecessor in title, owning abutting property would have been aggrieved at the time of the granting of the variance and recognizing that the plaintiff is an aggrieved party with the right to challenge the site plan, the court finds that the plaintiff lacks standing in this action to challenge the sufficiency of the recording of the legal notice of the variance.
In addition, the court is not convinced that the defect in the legal notice is sufficiently serious to render the variance ineffective. The general test as to whether a provision in a statute is merely directory as opposed to mandatory, is "whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words whether it relates to matter material or immaterial — to matters of convenience or substance" Gallup v. Smith, 59 Conn. 354, 358 (1890); ZoningBoard of Appeals of the Town of North Haven v. Freedom ofInformation Commission, 198 Conn. 498, 503 (1986).
The plaintiff's second argument regarding the variance appears to present a case of first impression in Connecticut. Further, it presents an issue which, in the opinion of the court, is far more substantial. The plaintiff contends that the 1986 variance allowed condominium units and therefore did not authorize the eighty units in the present site plan which, at least as of this date, have not been declared as condominium units. The plaintiff is absolutely correct that the variance allowed "residential condominiums consisting of a total of 128 units." The Meriden Zoning Regulations make no distinction that the court can find between "condominiums" and "apartments".
The plaintiff argues that since the variance is for condominiums it must be used in accordance with its terms. The plaintiff cites no authority in support of its argument. The defendant relying on ALR and Virginia and New Jersey cases argues that form of ownership is not a proper subject for consideration in zoning matters and accordingly, there is no difference between condominiums and apartments.
The defendant cites 71 ALR 3d 866, 868 for the following proposition: CT Page 8738
 In determining whether zoning or building regulations are applicable generally to condominiums, the courts have frequently noted that such regulations are concerned with type or manner of use, rather than form of ownership, so that the mere fact that the premises are held as condominiums will not subject them to regulation if the use contemplated is otherwise permissible.
In Natrella v. Board of Zoning Appeals, 231 Va. 451,345 S.E.2d 295, 302 (1986) the Virginia Supreme Court pointed out that a variance should be granted whether or not the property was used for condominiums where a project or development was physically identical and its impact on land use was the same since zoning is concerned with land use and not form of ownership. The New Jersey Supreme Court reached a similar decision in Bridge Park Companyv. Highland Park, 113 N.J. Super. 219, 273 A.2d 397, 398-399.
The Connecticut Supreme Court has held "zoning is concerned with the use of specific existing buildings and lots, and not primarily with their ownership." Petruzzi v. Zoning Board ofAppeals, 176 Conn. 479, 484 (1979). However, it must be pointed out that Petruzzi had nothing to do with condominiums. Petruzzi
was a case that concerned the continuing viability of a nonconforming use after changes in structures and the transfer of title to property. The Supreme Court in Petruzzi was ruling on the effect of ownership on the continued viability of a nonconforming use not the use of form of ownership as the basis for a zoning distinction.
Faced with what appears to be a matter of first impression, the court expresses no opinion on whether the general enabling zoning powers in Connecticut would allow zoning authorities to distinguish between condominiums and apartments. However, the court holds that at least when Meriden has not, in its zoning regulations, distinguished between condominiums and apartments there is no reason to find a limitation in the variance which is not contained in the regulation itself.
The court does not address the question of whether some type of declaratory judgment may later lie to force a declaration of condominiums. The court does hold that absent a distinction between apartments and condominiums in the zoning regulation the fact that the original variance authorized the construction of CT Page 8739 condominiums is not sufficient to overturn the granting of site plan approval for an apartment project.
Finally, the court addresses the question of the sufficiency of the parking in the present site plan. An examination of § 213-41 of the Meriden regulation makes it clear that the concern of the City of Meriden is that most cars associated with developed projects have a place where they can be parked off the public streets. It is also relatively clear, when one examines the regulation, that the Meriden Zoning Commission has made the assumption that two parking places are required for a normal apartment but that elderly housing will produce less cars so that one parking place per three units is sufficient. The validity of that assumption is not before this court at this time.
Meriden has two specific procedures for elderly housing. Section 213.26.4 provides for "planned elderly housing community." This type of elderly housing has its own parking requirements found in § 213.26.4(7). These requirements are totally different in numbers and methods of calculation from the requirements found in § 213-41K. Meriden also provides for planned cluster developments in § 213-26.3 and in § 213.26.5C(1)(g) provides for congregate living centers. The proposal before the court is not a congregate living center and congregate living centers appear to bear no relationship to the elderly housing parking requirements of § 213-41K.
At the argument on this matter the court raised questions which ultimately led the parties to 42 U.S.C. § 3602 et seq. Each side appears to have somewhat misunderstood the court's concern with the applicability of that section to the matter before it. The court recognizes that the Federal Statute does not directly effect the doings of the Meriden Regulatory Agency. However, it is the understanding of the court that a considerable portion of the argument in this matter concerns the meaning of "elderly housing" as used in the Meriden regulation. It is the court's holding that elderly housing must be interpreted in a manner that is consistent with 42 U.S.C. § 3602 et seq. It is further the holding of the court that because the federal statute fleshes out the meaning of "elderly housing" the term is not unduly vague. Accordingly, the court holds that the twenty-four "elderly housing units" must be units that comply with one of the exemptions provided in 42 U.S.C. § 3202 et seq.
Since it appears that it is possible, with appropriate CT Page 8740 restrictions on the land records, to comply with the "62 and over exemption", the court sustains the action of the Meriden Commission in issuing the permit. Because the Federal Statute and the exemptions thereunder give a working definition of what is allowed as "elderly housing", the parking requirement of § 213-41k as it pertains to "multifamily housing for the elderly" is not impermissibly vague. The court emphasizes that it is only finding that 42 U.S.C. § 3602 et seq. results in sufficient specificity to sustain the approval of the site plan. It makes no finding of compliance with 42 U.S.C. § 3602 et seq.
For the reasons stated in the foregoing opinion, the appeal is dismissed and the action of the commission in approving the plan is approved.