COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Ortiz, Lorish and Senior Judge Petty
Argued at Lexington, Virginia


THE BOARD OF SUPERVISORS FOR THE
 COUNTY OF LOUISA, VIRGINIA

                                                          OPINION BY
v.      Record No. 0023-23-2                    JUDGE DANIEL E. ORTIZ
                                                       FEBRUARY 27, 2024

VALLERIE HOLDINGS OF VIRGINIA, LLC


                    FROM THE CIRCUIT COURT OF LOUISA COUNTY
                                 Timothy K. Sanner, Judge

            Kristin B. Wright (Jennifer D. Royer; Royer Law Firm, P.C., on
            briefs), for appellant.

            H. Clark Leming (Peter R. Basanti; Leming and Healy, P.C., on
            brief), for appellee.

            Amicus Curiae: Virginia Electric and Power Company, d/b/a
            Dominion Energy Virginia (Andrew P. Sherrod; Randolph Critzer,
            Jr.; Hirschler Fleischer, A Professional Corporation, on brief), for
            appellant.


        Upon appeal of a circuit court decision reversing the decision of a board of zoning

appeals ("BZA"), this Court evaluates whether the circuit court's factual findings were plainly

wrong or without evidence to support them.  Vallerie Holdings of Virginia ("VHOV") applied to

the Louisa County BZA for a variance for an existing staircase and deck that extends into the

five-foot setback for property bordering Lake Anna.  After the BZA denied the variance, the

circuit court reversed, finding that the strict application of the zoning ordinance unreasonably

restricted VHOV's use of the property and that VHOV did not create its own hardship.  Because

the circuit court's findings were not plainly wrong or without evidence to support them, we

affirm.

BACKGROUND

In December 2015, VHOV purchased land at 349 Pleasants Landing Road in Bumpass, Louisa County, bordering Lake Anna, including a two-story house and a large marina building.[1] The house serves as a commercial office on the first floor, with a 400-square-foot private residence on the second floor. Under Louisa County Code § 86-117(a), residential structures fronting Lake Anna must be at least five feet from the property line.[2]

Before VHOV's purchase, Mike Averett owned the property. Averett began renovations on the house in fall 2005, including moving the exterior door to the upstairs from the east side of the building to the south side and covering over the old door. Averett also removed the staircase to the upper floor, so that at the time of VHOV's purchase, VHOV could access the upstairs only by ladder. Though Averett began remodeling the upstairs kitchen, he stopped due to financial difficulties, leaving the property vacant for several years. When VHOV bought it, the building's interior had been destroyed by vandalism, with broken windows and doors, "punched out" walls, and broken fixtures and appliances.

In early 2016, without applying for a building permit, VHOV owner Michael Vallerie built a staircase on the east side of the house, near the location of the old staircase. VHOV connected the stairs to a deck outside the new south-side door with a 50-square-foot "bridge," which encroached on the five-foot setback and crossed the Dominion property line.[3] In March 2016, VHOV notified county leaders that "an attempt to repair the steps leading to the upstairs of

---

[1] VHOV operates the Pleasants' Landing Marina as a recreational destination out of the larger building, running events on the surrounding shoreline and accessing the lake by agreement with Dominion Power, the owner of Lake Anna.

[2] Walkways and steps that access the lake directly may encroach into this setback, but decks and porches that merely overlook the lake may not. Louisa Cnty. Code § 86-117(a).

[3] In August 2016, VHOV trimmed the portion of the bridge that protruded across the property line, but left the bridge in the setback.

the residential structure shown on the site plan, evolved into a rebuild of the stairway which requires a permit. . . . We will immediately submit a building permit for the stairs already in progress."[4] In October 2016, the County approved VHOV's site plan for the property, noting that a deck "was constructed after survey work was completed" in February 2016, and was "within the [five-foot] building setback line," thus requiring a variance.[5]

Between 2017 and 2020, VHOV submitted several unsuccessful applications for a variance or special exception.[6] In December 2021, the BZA considered a new application for the same variance. The BZA heard testimony from Robert Gardner, the Louisa County Zoning Administrator, who said that VHOV had removed and replaced the stairway to the second floor without a permit in 2016. Gardner, relying on a staff report, alleged that VHOV had relocated the door from the east side of the building to the south side. He emphasized that any hardship was created by VHOV because it failed to get a permit before constructing the staircase, moved the door, and made "poor remodeling choices" in building the upstairs kitchen.[7] Gardner also

---

[4] This letter contradicts both photo evidence and trial testimony by Vallerie that the stairs did not exist at the time of his purchase. Vallerie addressed this confusion at the BZA hearing, affirming that there were no steps at the time of the purchase, and suggesting that he had used the wrong word in saying that he "repaired" the steps.

[5] The document also noted that the building could not be used until VHOV either obtained both a variance or special exception and a building permit, or removed the nonconforming deck and stairs. VHOV did not apply for a building permit.

[6] In 2018, following two denials, VHOV removed the staircase and applied for a variance again. The BZA voted 3-1 to grant the variance, and VHOV rebuilt the staircase, again without a permit. On appeal, the circuit court reversed the variance approval because a majority of the BZA had not approved the variance, as required by Code § 15.2-2312. Early in this litigation, the BZA filed a plea in bar and motion to dismiss, claiming that the denial of the variance was res judicata because of the earlier reversal. The circuit court denied the plea in bar, finding that it had not reviewed the hardship issue on the merits, and thus res judicata did not apply. That issue is not part of this appeal.

[7] Gardner highlighted a VHOV social media post that placed the damage to the house (and implicitly the cost of the remodel) at $38,000.

argued that VHOV could remove the encroachment by moving the door back to its original location and shifting the kitchen to the opposite interior wall ("kitchen option"), or by constructing an interior spiral staircase ("interior option").[8]

VHOV provided the BZA with emails from Averett and Stephanie Koren, a third party familiar with the property, that stated that the prior owner, not VHOV, had relocated the doorway and removed the staircase. VHOV stated that it had simply replaced the appliances and cupboards in the same place where they had been installed by Averett previously, relying on existing plumbing and electrical. VHOV estimated that the kitchen option would cost between $25,000 and $30,000, asserting that such a remodel would be unreasonable. VHOV also argued that the interior option was infeasible because the only available location for the staircase downstairs would end up in the upstairs kitchen, requiring the same relocation and remodeling as the kitchen option.

After the public hearing, BZA member Joe Leslie suggested that VHOV created its own hardship by spending $38,000 on remodeling without first determining that the steps and the door were in a legal location. Following some discussion, Leslie suggested that granting the variance would alleviate the hardship of lacking access to the second floor, but VHOV created the hardship, and thus the BZA should deny the variance. Chairperson Susan Fletcher disagreed, stating that the hardship was the location of the building, which VHOV did not create. While the BZA members seemed to agree that the interior option would make upstairs access difficult, Leslie and BZA member Juanita Jo Matkins suggested that VHOV had "other options" for accessing the second floor, even without moving the doorway. Leslie said that was what they would "hang their hat on." His motion to deny the variance was seconded and passed 6-1.

_____

[8] A Dominion representative and an Assistant County Attorney also testified, in support of enforcement of the setback requirements.

Following VHOV's petition for certiorari in the circuit court, the circuit court held a hearing in August 2022. Russell Stevens, an expert in building and contracting who had worked in and around the property, testified first. He testified that the kitchen option would likely cost between $35,000 and $40,000 and would require moving all of the electrical and plumbing to the other wall, and then replacing the walls and repairing the floors. He discussed the possibility of "other options" relied upon by Mr. Leslie and the BZA, testifying that no possible location in the southern or western side of the house could comply with a building code requirement that the staircase be at least ten feet from the building.[9] Stevens also testified that the interior option would take up a lot of space and an obvious location for the staircase inside the building did not exist.

Vallerie then testified that the building lacked stairs when he bought it. He described the vandalized state of the building when he bought it, stating that "[e]very window was broken. Every door was broken . . . . [E]very pipe was broken." He testified that despite the vandalism, the eastern wall still contained plumbing and 220-volt electrical wiring which he used to rebuild the kitchen. He also testified that relocating the stairs to the northern side of the house would be difficult due to the onsite sewage and water utilities.

On cross-examination, Vallerie admitted that he had built the stairs without permits, at an initial cost of $12,000. He said that initially he built the staircase without a permit to protect and secure the property, and then he used the staircase to begin repairs. He testified that when he bought the house, the upstairs had only "remnants of a kitchen." He said that the pipes, which

_____

[9] In January 2022, a building official notified VHOV that the property was unsafe because of several building code violations related to the stairs. Among other things, the stairs allegedly violated a fire separation requirement that "exterior exit stairways and ramps shall have a minimum fire separation distance of" ten feet from adjacent lot lines and other parts of the building. The notice of violation is the subject of separate enforcement proceedings, and the circuit court found that any issue of building code violations was not relevant to this variance application.

had burst because of cold weather, needed to be "repaired," as did the cabinets and counters, denying that all of the plumbing had required replacement.

John Grubbs, from the County building division, was the sole witness for the Board of Supervisors ("Board"). He testified that he inspected the property in January 2022 and issued a building code violation letter. He stated that because the building included an upstairs residence and a downstairs commercial space, which were not fire-separated, any exterior staircase needed to comply with a ten-foot separation requirement for safety reasons. Such fire-proofing would require removing the floor and ceiling between the two levels and inserting sheet rock in its place. He testified that when pipes have burst from freezing, they must be replaced, not simply repaired. He also stated that moving electrical to another part of a building was standard in renovations.

The circuit court reversed the BZA decision and granted the variance. The court found that the BZA had not articulated the reasons for its denial of the variance. In contrast, it found VHOV's evidence "credible and compelling." The court concluded "by a preponderance of the evidence" that the application of the setback requirement unreasonably restricted the property because the building was set so close to the property line without access to the second story—a challenge predating VHOV's purchase of the property. The court found that other options "were not reasonable in the terms of cost, complexity, and feasibility."

Finding that VHOV had proven an unreasonable restriction under Code § 15.2-2309(2), the court found it unnecessary to address whether VHOV had also proven a hardship. The court found that the BZA did not make findings on the five secondary factors of Code § 15.2-2309(i)-(v), since it declined to find hardship or unreasonable restriction. The court evaluated each factor, finding that each was satisfied, including that "the property was acquired

in good faith and the hardship was not created by VHOV." Thus, the court ordered that VHOV be granted a variance. The Board appeals.

ANALYSIS

I. Standard of Review

This appeal requires us to determine the standard of review which applies on appeal when a circuit court reverses the decision of a BZA to deny a variance. In doing so, we must harmonize the different presumptions of correctness afforded to a variance decision by a BZA and the factual findings of a circuit court. *See, e.g.*, *Bd. of Supervisors v. Lerner*, 221 Va. 30, 34-35 (1980) (assimilating the presumption of legislative validity with the presumption of correctness of circuit court factual findings in a rezoning case where a board of supervisors and circuit court reached opposite conclusions). Virginia law establishes procedures for a property owner to apply for a variance from the zoning laws, after which the matter is to be placed on the docket to be acted upon by the relevant BZA. *See* Code § 15.2-2310. The Code sets forth the substantive standards governing decisions to grant or deny variances in some detail. *See* Code §§ 15.2-2201 (defining "variance"); 15.2-2309(2).

Under Code § 15.2-2314, any person aggrieved by a BZA decision may petition the circuit court for a writ of certiorari for the court to review the BZA decision. When the court reviews the grant or denial of a variance application, "the decision of the board of zoning appeals shall be presumed to be correct." Code § 15.2-2314. "The petitioner may rebut that presumption by proving by a preponderance of the evidence, including the record before the board of zoning appeals, that the board of zoning appeals erred in its decision." *Id.* "[A]ny party may introduce evidence . . . in accordance with the Rules of Evidence of the Supreme Court of Virginia." *Id.* "A writ proceeding under Code § 15.2-2314 presents a unique circumstance in which, although the court is hearing an appeal, it is also authorized to take new evidence—a practice typically

prohibited at an appellate hearing." *Graydon Manor, LLC v. Bd. of Supervisors of Loudoun Cnty.*, 79 Va. App. 156, 163 (2023); *see also School Bd. v. Nicely*, 12 Va. App. 1051, 1064 (1991) (noting that a similar administrative appeal of a school board decision under Code § 22.1-214(D) "is not a trial de novo in the purest sense" but is a "quasi trial de novo," giving deference to the agency's factual findings but taking new evidence and making new rulings on issues of fact and law). This unusual "hybrid" posture creates tension between the usual deference owed to decisions of a BZA and to factual findings made after taking evidence at trial. *See generally Graydon Manor*, 79 Va. App. at 165.

The Board asserts that Code § 15.2-2314 required the circuit court to give deference to the BZA's factual findings and that VHOV failed to rebut those findings. But the statute makes clear that, in relation to variances, only the "decision" of the BZA is presumed to be correct. Code § 15.2-2314. "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011)). The plain language only requires a circuit court to defer to the ultimate decision of the BZA, not any underlying factual findings the BZA makes.[10]

---

[10] We also note that the General Assembly used different language in outlining the circuit court's review of the determination of a zoning administrator. *See* Code § 15.2-2314. For those cases, "the *findings and conclusions of the board of zoning appeals on questions of fact* shall be presumed to be correct." *Id.* (emphasis added). "[W]hen the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional." *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001). The different language used to describe the standard of review for variance cases underscores our holding that only the BZA's decision to grant or deny the variance is presumed correct.

Because we hold that a circuit court need only defer to the BZA's decision, it does not matter that here the circuit court found the BZA had not made any factual findings or articulated the reason for its decision.

- 8 -

In 2015, the General Assembly amended Code § 15.2-2314, modifying the standard for rebutting the presumption of correctness afforded to a BZA decision to grant or deny a variance. *See* 2015 Va. Acts ch. 597. Before 2015, the presumption of correctness of a BZA decision could be rebutted only "by showing to the satisfaction of the court that the board of zoning appeals applied erroneous principles of law," or, in matters of the BZA's discretion, "the decision of the board of zoning appeals was plainly wrong and in violation of the purpose and intent of the zoning ordinance." *See id.* In contrast, the presumption may now be rebutted by "proving by a preponderance of the evidence" that the BZA "erred in its decision." *See id.*

On appeal, "[t]he factual determinations of the [circuit] court . . . are binding on this Court, and we will reverse such findings 'only if they are plainly wrong or without evidence to support them.'" *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007) (second alteration in original) (quoting *Mercer v. Commonwealth*, 259 Va. 235, 243 (2000)). Relying on *Lovelace v. Orange County Board of Zoning Appeals*, 276 Va. 155 (2008), the Board asserts that the presumptions of validity owed to the findings of the circuit court and the findings of the BZA on appeal are equivalent. *See id.* at 158 ("On appeal before a circuit court, the BZA's findings and conclusions on questions of fact are presumed correct. . . . Likewise, on appeal to this Court, the circuit court's findings of fact are presumed correct."). But *Lovelace* pre-dates the 2015 revisions to Code § 15.2-2314.[11]

We must decide, then, as a matter of first impression, the weight to give to these two presumptions. When the circuit court and the BZA disagree, the presumptions are in conflict.

---

[11] Notably, in the cases leading up to *Lovelace*, the Supreme Court consistently held that "[a] circuit court decision *affirming* a board of zoning appeals determination is . . . accorded [the] presumption of correctness on appeal," the same presumption given to the BZA. *Masterson v. Bd. of Zoning Appeals*, 233 Va. 37, 44 (1987) (emphasis added); *see also Natrella v. Bd. of Zoning Appeals*, 231 Va. 451, 456 (1986). We find no authority, however, delineating the proper standard of review in cases where the circuit court *reversed* the decision of a BZA.

*Cf. Lerner*, 221 Va. at 34-35 (analyzing a similar conflict between presumptions in rezoning matters). In *Lerner*, the Supreme Court considered how to harmonize the presumption of correctness given to a circuit court's factual findings with the presumption of legislative validity given to zoning decisions by a BZA or other local body. *See id.* Unlike the presumption as to the BZA's variance decision, which may be rebutted by a preponderance of the evidence, other legislative action must be upheld so long as there is "some evidence" that the decision is reasonable. *Compare id.* at 34, *with* Code § 15.2-2314. In that case, the Court found that the presumption of legislative validity "accompanies the legislative action when [it] is brought to this [C]ourt for review, and it is viable until this [C]ourt holds with the trial court that the legislative action is unreasonable." *Lerner*, 221 Va. at 35. Here, in contrast, the presumption of validity may be overcome by a preponderance of the evidence and is therefore more easily rebutted than the presumption of correctness afforded to factual findings of a circuit court. *See id.*; Code § 15.2-2314. Accordingly, so long as the circuit court applies the presumption as required by Code § 15.2-2314, the presumption in favor of the BZA's decision does not directly apply to review by this Court. Therefore, we apply the ordinary presumption on appeal from a circuit court, and the circuit court's factual findings "shall not be set aside unless it appears from the evidence that [they are] plainly wrong or without evidence to support [them]." Code § 8.01-680; *see also Nusbaum*, 273 Va. at 408. In doing so, we "view the evidence in the light most favorable to the prevailing party at trial and . . . accord to that party the benefit of all reasonable inferences fairly deducible from the evidence." *Nusbaum*, 273 Va. at 407.

We review questions of statutory interpretation de novo. *Sarafin v. Commonwealth*, 288 Va. 320, 325 (2014).

II. Amendments to the Statutory Variance Framework

This case also requires us to consider the proper application of Code §§ 15.2-2201 and -2309, which have not been applied by this Court or the Supreme Court since they were amended in 2015. *See* 2015 Va. Acts ch. 597. Under the revised Code § 15.2-2201, a variance is

> a reasonable deviation from those provisions regulating the shape, size, or area of a lot or parcel of land or the size, height, area, bulk, or location of a building or structure when the strict application of the ordinance would unreasonably restrict the utilization of the property, and such need for a variance would not be shared generally by other properties, and provided such variance is not contrary to the purpose of the [zoning] ordinance.[12]

"[A] variance shall be granted" by a BZA if either (1) "the strict application of the terms of the ordinance would unreasonably restrict the utilization of the [applicant's] property," or (2) "the granting of the variance would alleviate a hardship due to a physical condition relating to the property or improvements thereon at the time of the effective date of the ordinance."[13] Code § 15.2-2309(2). An applicant must also satisfy five secondary conditions: (1) "the property interest for which the variance is being requested was acquired in good faith and any hardship was not created by the applicant for the variance;" (2) "the granting of the variance will not be of substantial detriment to adjacent property and nearby properties;" (3) "the condition or situation of the property concerned is not of so general or recurring a nature as to make reasonably practicable the formulation of a general regulation to be adopted as an amendment to the [zoning] ordinance;" (4) "the granting of the variance does not result in a use that is not

---

[12] Before 2015, a variance was defined in relevant part as "a reasonable deviation" from various zoning provisions "when the strict application of the ordinance would result in *unnecessary or unreasonable hardship* to the property owner." 2015 Va. Acts ch. 597 (emphasis added) (amending Code § 15.2-2201).

[13] The statute provides for a third possibility, related to reasonable modifications for individuals with disabilities, not relevant here. *See* Code § 15.2-2309(2).

otherwise permitted on such property or a change in the zoning classification of the property;" and (5) "the relief or remedy sought by the variance application is not available through a special exception process . . . or the process for modification of a zoning ordinance."[14]  *Id.*

Previously, a BZA was authorized—though not compelled—to grant a variance "when, owing to special conditions a literal enforcement of the provisions will result in *unnecessary hardship*"; the statute did not include the "unreasonable restriction" alternative present today. *See* 2015 Va. Acts ch. 597 (emphasis added) (amending Code § 15.2-2309(2)).  The property owner was also required to show

> that his property was acquired in good faith and where by reason of the exceptional narrowness, shallowness, size, or shape of a specific piece of property at the time of the effective date of the ordinance, or where by reason of exceptional topographic conditions or other extraordinary situation or condition of the piece of property, or of the condition, situation, or development of property immediately adjacent thereto, the strict application of the terms of the ordinance would effectively prohibit or unreasonably restrict the utilization of the property, or . . . that the granting of the variance will alleviate a clearly demonstrable hardship, as distinguished from a special privilege or convenience sought by the applicant, provided that all variances shall be in harmony with the intended spirit and purpose of the ordinance.

*Id.*  A 2009 amendment removed language requiring the property owner to show "a clearly demonstrable hardship *approaching confiscation*."  2009 Va. Acts ch. 206 (emphasis added). Further, a BZA was expressly prohibited from issuing a variance unless it made findings that (1) "the strict application of the ordinance would produce undue hardship relating to the property;" (2) "the hardship is not shared generally by other properties in the . . . vicinity;" and (3) "the authorization of the variance will not be of substantial detriment to adjacent property and . . . the character of the district will not be changed by the granting of the variance."  *Id.*

---

[14] The parties contest only the application of the first factor here.

Analyzing the prior variance statute, the Supreme Court noted that the language used "to define 'unnecessary hardship' clearly indicates that the General Assembly intended that variances be granted only in cases where application of zoning restrictions would appear to be *constitutionally impermissible*." *Packer v. Hornsby*, 221 Va. 117, 122 (1980) (emphasis added).[15] "[T]he BZA ha[d] authority to grant variances only to avoid an unconstitutional result"—in other words, a taking. *Cochran v. Fairfax Cnty. Bd. of Zoning Appeals*, 267 Va. 756, 764 (2004). Thus, a BZA could only grant a variance in the narrowest of circumstances—when the zoning ordinance "interfere[d] with *all reasonable beneficial uses of the property, taken as a whole*." *Id.* at 765 (quoting *Commonwealth v. Cnty. Utils. Corp.*, 223 Va. 534, 542 (1982)).

We review the changes to Code §§ 15.2-2201 and -2309 in light of this history. "[The General Assembly] is presumed to have known and to have had the common law in mind in the enactment of a statute." *Isbell v. Com. Inv. Assocs.*, 273 Va. 605, 614 (2007) (alteration in original) (quoting *Wicks v. City of Charlottesville*, 215 Va. 274, 276 (1974)). "The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested." *Boyd v. Commonwealth*, 236 Va. 346, 349 (1988). Even so, we do not "construe legislative action in a manner that would ascribe to the General Assembly a futile gesture." *Shaw v. Commonwealth*, 9 Va. App. 331, 334 (1990). "We will not read into the statute language which the legislature purposefully deleted." *Id.*

Here, the text of the statute combined with the Supreme Court precedents makes clear that the legislature intended to expand the availability of variances. *See* Code § 15.2-2309(2). Rather than merely authorizing variances in narrow circumstances, the statute now *orders* BZAs to issue a variance in certain circumstances. *Id.* The amendments eliminated language that

---

[15] Foreshadowing the 2015 amendments, the Supreme Court noted, however, that "[a] statute may, of course, authorize variances in cases where [an] ordinance's application to particular property is not unconstitutional." *Packer*, 221 Va. at 122.

property conditions must be "exceptional" or "extraordinary"; removed the possibility that a variance could be granted when conditions "effectively prohibit[ed]" rather than simply "unreasonably restrict[ed]" the use of the property; and cut phrases describing any hardship as "undue," "unnecessary," "unreasonable," or "clearly demonstrable." 2015 Va. Acts ch. 597 (amending Code §§ 15.2-2201 and -2309(2)). The 2009 elimination of confiscation language also separates the variance standard from the constitutional takings standard. *See* 2009 Va. Acts ch. 206 (amending Code § 15.2-2309(2)); *Cochran*, 267 Va. at 764. Now, the zoning ordinance need only "unreasonably restrict the utilization of the property," or cause "hardship due to a physical condition relating to the property or improvements thereon." Code § 15.2-2309(2). The General Assembly intended a lower bar for property owners seeking a variance, abrogating the common-law rule. *See Boyd*, 236 Va. at 349. We thus exercise caution in relying on case law interpreting the prior variance standard.

III. Application of Code § 15.2-2309(2)

A. The circuit court did not err in finding that the strict application of the zoning ordinance unreasonably restricts VHOV's use of its property.

An applicant for a variance must show that "the strict application of the terms of the ordinance would unreasonably restrict the utilization of the property" or "the granting of the variance would alleviate a hardship due to a physical condition relating to the property or improvements thereon." Code § 15.2-2309(2). The Board first argues that VHOV is not eligible for a variance because the zoning ordinance does not unreasonably restrict the use of the property. The circuit court, reversing the BZA's decision to deny the variance, found that "the strict application of the . . . ordinance . . . unreasonably restrict[s] the utilization of the property." *See* Code § 15.2-2309(2). We must defer to the circuit court's factual finding unless it is "plainly wrong or without evidence to support [it]." *Nusbaum*, 273 Va. at 408 (quoting *Mercer*, 259 Va. at 243).

- 14 -

Historically, an owner could prove that a zoning ordinance "unreasonably restrict[ed] the use of the property" as one of several "'special conditions' which would cause compliance with a zoning ordinance to result in an 'unnecessary hardship.'" *Natrella v. Bd. of Zoning Appeals*, 231 Va. 451, 457 (1986) (quoting *Packer*, 221 Va. at 121). In amending Code § 15.2-2309, the General Assembly retained the phrase "unreasonably restrict the utilization of the property," though it is no longer rolled up into a finding of "unnecessary hardship." *See* Code § 15.2-2309(2). The limited case law expressly discussing the "unreasonable restriction" path provides little guidance for VHOV's situation. *See, e.g.*, *Natrella*, 231 Va. at 457-62 (upholding a variance to convert a non-conforming apartment building to a condominium, because in light of statute providing for non-discrimination against condominium-style buildings, and the absence of other land use impacts, preventing such a variance would be an unreasonable restriction); *Azalea Corp. v City of Richmond*, 201 Va. 636, 643-44 (1960) (holding that denial of a variance to build private driveways leading to commercial land on the other side of the city line was an unreasonable restriction based on the extraordinary impact to the entire large parcel, mostly located outside the city; the inability to develop the in-city portion residentially; and the limited public benefit of the restriction); *Burkhardt v. Bd. of Zoning Appeals*, 192 Va. 606, 617-18 (1951) (affirming the grant of a variance to a retail store from a setback requirement that "serve[d] no useful purpose" because there were no adjoining owners; other stores fronted the street; and the building was the "minimum [size] needed" to meet customer needs).

"When construing a statute, our primary objective is '"to ascertain and give effect to legislative intent,"' as expressed by the language used in the statute." *Cuccinelli*, 283 Va. at 425 (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). A restriction is "reasonable" if it is "[f]air, proper, or moderate under the circumstances; sensible." *Reasonable*, *Black's Law Dictionary* (11th ed. 2019). In contrast, an "unreasonable" restriction is one "[n]ot guided by

- 15 -

reason; irrational or capricious." *Unreasonable*, *Black's Law Dictionary*, *supra*. In the context of property law, a "restriction" is "[a] limitation . . . placed on the use or enjoyment of property." *Restriction*, *Black's Law Dictionary*, *supra*. Thus, under Code § 15.2-2309(2), a BZA "shall" issue a variance if the effect of the zoning ordinance is to limit the use or enjoyment of the property in a way that is irrational, capricious, or not fair or sensible under the circumstances. A BZA must decide whether to grant a variance based on "the particular facts of an application, including the precise extent of the relief sought." *Spence v. Bd. of Zoning Appeals*, 255 Va. 116, 120 (1998). Reasonableness and fairness thus include evaluating the unique circumstances of the property, the applicant, and the proposed deviation from the ordinance. *See id.*; *see also Chilton-Belloni v. Angle*, 294 Va. 328, 339-40 (2017) (holding that res judicata does not bar reconsideration of a variance application, in the context of changing and evolving zoning laws and factual circumstances). Though financial loss is a factor, alone it is not enough to prove an unreasonable restriction. *See Natrella*, 231 Va. at 458.

Here, denial of the variance would require VHOV to dismantle the bridge connecting the only entrance to its upper residential floor to the stairs reaching the ground. That removal would at least temporarily require VHOV to access the upstairs by ladder, which would not provide reasonable access to the upstairs part of the building. While the Board contends that VHOV could access the building via the "kitchen option," the "interior option," or some other configuration of the stairs, at trial, VHOV put forward evidence that each option was unfeasible within the constraints of other legal obligations. The kitchen option, which would require relocating the internal appliances, plumbing, and electrical wiring to the opposite wall, would cost somewhere between $25,000 and $40,000. The interior option would similarly require the relocation of the appliances, plumbing, and wiring at the same cost, as there was no location for the stairs to reach the upstairs without running into the existing kitchen area. VHOV submitted

evidence that other potential locations for the staircase would be unfeasible given the location of existing water and sewer lines and fire-proofing requirements. The effect of the ordinance, strictly applied, is thus to deny VHOV access to its upper floor unless it can pay tens of thousands of dollars for a complete remodel or relocate the building altogether. The circuit court was not "plainly wrong" in finding that this was an unreasonable restriction on the use of the property.[16] *See Nusbaum*, 273 Va. at 408 (quoting *Mercer*, 259 Va. at 243); Code § 15.2-2309(2).

B. The circuit court's finding that VHOV did not create its own hardship is not plainly wrong.

The Board also argues that VHOV is not eligible for a variance because any hardship was self-inflicted. A variance applicant must show that "the property interest for which the variance is being requested was acquired in good faith and any hardship was not created by the applicant for the variance." Code § 15.2-2309(2)(i). This requirement codifies prior case law that "a self-inflicted hardship, whether deliberately or ignorantly incurred, provides no basis for the granting of a variance." *Steele v. Fluvanna Cnty. Bd. of Zoning Appeals*, 246 Va. 502, 507 (1993).

The Board argues that VHOV created its own hardship by constructing the stairs without a building permit and without awaiting the results of the survey of the property. Further, even though the interior of the residence was "destroyed," providing an ideal window to adjust the layout, VHOV constructed its kitchen around the preexisting door, rather than moving the door to a location where the stairs would not violate the setback. The Board asserts that any "hardship" is merely VHOV's personal preference about where to locate the stairs. While the Board frames the hardship as the financial cost and inconvenience of remodeling to comply with

---

[16] Having found that the circuit court did not err in finding that the ordinance unreasonably restricts VHOV's use of the property, we need not determine whether granting a variance "would alleviate a hardship due to a physical condition relating to the property or improvements thereon." Code § 15.2-2309(2).

the setback, VHOV argues that the hardship arises from the preexisting locations of the door, kitchen plumbing and wiring, and property line, which together make it difficult to access the upstairs without intruding on the setback.

The evidence, including testimony from Vallerie and letters from Averett and Koren, supports the circuit court's finding that when VHOV purchased the residence, it lacked stairs. The evidence also showed that Averett, not VHOV, moved the door to its new position on the south wall. Though Vallerie's testimony was somewhat inconsistent about the extent of damage to the pipes and whether any remained intact after the vandalism, the guts of the interior kitchen were in the same place as they are now, including the 220-volt electrical fixtures. VHOV built the deck, bridge, and stairs to reach the existing door, and then re-modeled the kitchen, at an estimated cost of $38,000. VHOV did not consult the County about whether the position of the doors and the exterior stairs satisfied zoning requirements. After hearing all the evidence, the circuit court found that the hardship "was created when the property was built as close as it was to the property line and . . . the structure included no access to its second story, the residential part of the building," concluding that the hardship was not self-inflicted.

Merely purchasing property that will require a variance is not enough to qualify as a self-inflicted hardship. *Spence*, 255 Va. at 120. Though VHOV took steps following purchase that might increase the cost of moving the stairs, the circuit court's finding that the hardship pre-existed VHOV's purchase is not "plainly wrong." *Nusbaum*, 273 Va. at 408 (quoting *Mercer*, 259 Va. at 243). VHOV did not build the house near the property line. VHOV did not re-locate the door from the southeastern side of the house, where stairs would have more easily avoided the setback area, and close up the wall where the door once existed. VHOV did not build the original pipes or install the electrical wiring that runs into the now-functional kitchen. Had the hardship originated solely from the fact that moving the kitchen and the door would be

unreasonably costly, we would be bound to find that the hardship was self-inflicted. *See Steele*, 246 Va. at 506-07 (finding that hardship was self-inflicted when homeowners unintentionally built their house in violation of residential setback based on inaccurate information about the property line, requiring homeowners to relocate the northern part of their already-completed house). On these facts, however, the circuit court, empowered to take evidence and make factual determinations, was not plainly wrong. *See Nusbaum*, 273 Va. at 408 ("As an appellate court, we are not permitted to reweigh the evidence."); *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004) ("Our function [as an appellate court] . . . is not to preside de novo over a second trial."). We thus affirm the circuit court's finding that VHOV did not create its own hardship.

CONCLUSION

Upon review before an appellate court, a circuit court's factual findings about an application for a variance under Code § 15.2-2309(2) will "not be set aside unless it appears from the evidence that [they are] plainly wrong or without evidence to support [them]." Code § 8.01-680. We find that the circuit court was not plainly wrong in finding that the strict application of the zoning ordinance here would unreasonably restrict the use of VHOV's property and that the hardship VHOV faced was not self-inflicted. We therefore affirm the judgment of the circuit court ordering the BZA to grant VHOV a variance.

*Affirmed.*